James Edward HAYNES *v.* STATE of Arkansas

CR 01-414                              58 S.W.3d 336

Supreme Court of Arkansas
Opinion delivered November 1, 2001

*Phyllis J. Lemons*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Clayton K. Hodges*, Ass't Att'y Gen., for appellee.

TOM GLAZE, Justice. James Haynes appeals from his first-degree murder conviction and life sentence, raising three points for reversal. We find that none of them has merit, and we affirm.

Malvern police responded to a call at 430 Oak Street during the late afternoon of June 29, 1999, and found two bodies in a back bedroom. One person, eighteen-year-old Shamone Haynes, was unresponsive and was pronounced dead at the scene, but the other person, James Haynes, was still breathing. As emergency medical personnel worked to stabilize him, he stated that he had shot himself and wanted to die. He also said he had shot Shamone, his niece, because he did not want Shamone "to go through all the trouble in life." Haynes was taken to the hospital in Hot Spring County and later transported to UAMS in Little Rock.

After Haynes was arrested and charged with capital murder, the Hot Spring County Circuit Court ordered him to undergo a mental evaluation. Dr. Paul Deyoub conducted the evaluation on September 17, 1999, and concluded that Haynes was competent to stand trial and, at the time of the shootings, had been able to conform his conduct to the requirements of the law. Dr. Deyoub diagnosed Haynes with "major depressive disorder, recurrent, moderate," and noted that he had borderline intellectual functioning, but he was never psychotic and knew right from wrong.

After Dr. Deyoub filed his report, Haynes filed a motion requesting a second, independent mental evaluation. The court ordered the second evaluation on December 10, 1999, and on February 4, 2000, Haynes was examined by Dr. Mary Wetherby. Haynes filed a notice on August 24, 2000, pursuant to Ark. Code Ann. § 5-2-304 (Repl. 1997), asserting that he intended to rely on the affirmative defense of mental disease or defect.

The trial court held a competency hearing on August 31, 2000, at the end of which, the judge ruled both sides had presented compelling evidence, and when he weighed both arguments, he

could not "find one balancing any heavier than the other in favor of incompetency." The judge ruled that Haynes was competent, and noted that the question of Haynes' sanity at the time of the commission of the crime would be a question for the jury. Haynes was tried and convicted of first-degree murder by a jury on September 1, 2000.

■■ Of his three points on appeal, we first consider Haynes's argument that there was insufficient evidence to convict him of first-degree murder, since double-jeopardy considerations require this court to consider a challenge to the sufficiency of the evidence prior to the others. *See Cox v. State*, 345 Ark. 391, 47 S.W.3d 244 (2001). A motion for a directed verdict is a challenge to the sufficiency of the evidence, and the test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.*

. At trial, Haynes moved for a directed verdict at the close of the State's case, stating as follows:

> First of all, we move for a directed verdict of acquittal. The law first requires that the State prove premeditation, deliberation. And the State has failed to introduce any evidence whatsoever to establish the premeditation necessary for a conviction of capital murder. And without that having been proven this case shouldn't go to the jury. . . . Not only on capital murder but any lesser included offenses. There has not been necessary elements to prove the offense. There is insufficient evidence totally.

Haynes again moved for a directed verdict at the close of his own case, asserting once more that the State had "failed to meet their burden to show the specific elements of capital murder or any lesser included elements." The trial court denied the motion.

■■ This court has held that, in order to preserve challenges to the sufficiency of the evidence supporting convictions for lesser-included offenses, defendants are required to address the lesser-included offenses either by name or by apprising trial courts of the elements of the lesser-included offenses questioned by their motions for directed verdict. *See Ramaker v. State*, 345 Ark. 225, 46 S.W.3d 519 (2001). In *Ramaker*, the defendant had been charged with capital murder but convicted of first-degree murder. Because Ramaker had failed to move for a directed verdict on the lesser-included offense of first-degree murder, this court held he was

procedurally barred from challenging the sufficiency of the evidence on appeal. *See also Webb v. State*, 328 Ark. 12, 941 S.W.2d 417 (1997); *Jordan v. State*, 232 Ark. 628, 917 S.W.2d 164 (1996). In *Smith v. State*, 310 Ark. 247, 837 S.W.2d 279 (1992), this court noted that the *mens rea* for first-degree murder does not require premeditation and deliberation; rather, the State need only prove that the defendant purposefully caused the death of another. Thus, the elements of capital murder and first-degree murder are different. Here, Haynes did not mention first-degree murder by name, nor did he apprise the trial court of any of the elements of first-degree murder; instead, he simply moved for directed verdict because the State had not met its burden as to "any lesser-included offenses." In accordance with the reasoning set out in *Ramaker*, we hold Haynes is procedurally barred from challenging the sufficiency of the evidence.

■■ For his second point, Haynes argues that the trial court erred in determining that he was competent to stand trial. Ark. Code Ann. § 5-2-302 (Repl. 1997) provides that "[n]o person who, as a result of mental disease or defect, lacks capacity to understand the proceedings against him or to assist effectively in his own defense shall be tried, convicted, or sentenced for the commission of an offense so long as such incapacity endures." A criminal defendant is presumed to be competent, and the burden of proving incompetence is on the accused. *Baumgarner v. State*, 316 Ark. 373, 872 S.W.2d 380 (1994). The test of competency to stand trial is whether a defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational, as well as factual, understanding of the proceedings against him. *Id.* On appellate review of a finding of fitness to stand trial, we affirm if there is substantial evidence to support the trial court's finding. *Key v. State*, 325 Ark. 73, 923 S.W.2d 865 (1996).

On this issue, the trial court was presented with conflicting expert testimony at the competency hearing. Dr. Mary Wetherby, a neuropsychologist, examined Haynes in February of 2000. From her evaluation and from interviews with Haynes's family members and co-workers, Dr. Wetherby concluded that Haynes suffered from various deficits, including impaired memory and impaired expressive language functioning. Dr. Wetherby also noted that Haynes had been experiencing a change in personality over the two years after his son's death, which caused Haynes to suffer from extreme depression. Her overall conclusion was that Haynes's intelligence

was in the borderline range (he scored a full-scale 73 on the Wechsler Adult Intelligence Scale), and that he had global neurological deficits that would impair his ability to assist his lawyer in his own defense. Wetherby further stated that Haynes had difficulty describing the "players" in the courtroom, and she asserted that his reasoning and expressive language deficits would affect his ability to stand trial. In conclusion, Dr. Wetherby announced her opinion that Haynes was neither competent to stand trial nor able to assist his attorney in his defense.

Dr. Paul Deyoub, who evaluated Haynes in September of 1999, three months after the murder, testified for the State. Dr. Deyoub testified that he conducted a clinical interview with Haynes in order to determine his competency to stand trial, and that although he diagnosed Haynes with having major depressive disorder and borderline intellectual functioning, Haynes was still competent to stand trial and had the ability to appreciate the criminality of his conduct. After pointing out that Haynes had not previously had any experience with the legal system, Deyoub noted that Haynes was "educable" regarding the system, and was able to relate to his attorney and to understand the participants of the legal system. Dr. Deyoub also rebutted some of Dr. Wetherby's testimony by stating that one could "have all kinds of deficits and still be competent to proceed."

Dr. Deyoub testified that he found no evidence of psychosis in Haynes. He noted that there was a report from a UAMS physician who consulted briefly on the case when Haynes was brought to the hospital for treatment of his self-inflicted gunshot wound, and that physician stated Haynes suffered from a "psychotic disorder, not otherwise specified." However, Deyoub pointed out that the UAMS physician opined he was "not sure of the validity of [the] psychosis." Further, Dr. Deyoub said that he found some indication that Haynes was malingering, or at the very least amplifying his symptoms in order to communicate how depressed he was. Deyoub's conclusion, based in part on the Competency to Strand Trial Assessment Instrument, was that Haynes could participate in legal proceedings and help his lawyer assist in his defense. He also opined that, at the time of the offense, Haynes was able to conform his conduct to the requirements of the law.

At the conclusion of the hearing, the trial judge stated that he was impressed by Dr. Wetherby's testing, and said that, while he had some concern about Haynes's ability to stand trial, the judge was

convinced that Haynes knew that he was being tried for the unlawful killing of Shamone. The judge said, "I'm convinced from the reports that have been introduced and the other testimony that he knows that he will be. punished if he's found guilty." He concluded his ruling as follows:

> When I try to weigh these . . . things, I can't find one balancing any heavier than the other in favor of incompetency. Consequently, the court's decision is that the defendant is competent and that he will stand trial. Now, of course, the issue of insanity at the time of the commission of the offense, the legal issue, will be presented to the jury for determination of the facts. I can't say so I must rule in favor of the State. In other words, I must rule against the defense because the burden of proof is on the defense. And I find the evidence to be pretty equally balanced with some very positive things both ways. But the greater weight of the aspects are in favor of competency.

Thus, faced with conflicting expert testimony, the trial court decided Haynes had not met his burden of proof.

■ This court will affirm a trial court's finding of competency if there is substantial evidence to support that finding; here, Dr. Deyoub testified that Haynes was able to identify the charges against him and understand the basic functioning of the court system. The law does not require an accused to identify with specificity the charges filed against him. *Key v. State*, 325 Ark. 73, 923 S.W.2d 865 (1996). Rather, § 5-2-302 requires that an accused have the capacity to "understand the proceedings against him." *Id*. That threshold was met here, as Dr. Deyoub rendered his opinion that Haynes understood the fundamental nature of the proceedings. Therefore, the trial court's finding that Haynes was competent to stand trial is supported by substantial evidence.

For his last point, Haynes argues that the trial court erred in denying his motion for a directed verdict of acquittal on his affirmative defense of mental disease or defect. At the close of his case, Haynes moved for directed verdict, asserting that he had "met [his] burden of proof by a preponderance of the evidence as to the mental disease or defect." The trial court denied the motion both times.

■ Ark. Code Ann. § 5-2-312(a) (Repl. 1997) provides that "[i]t is an affirmative defense to a prosecution that at the time the defendant engaged in the conduct charged, he lacked capacity, as a

result of mental disease or defect, to conform his conduct to the requirement of law or to appreciate the criminality of his conduct." Further, Ark. Code Ann. § 5-1-111(d) (Repl. 1997) provides that a defendant must prove an affirmative defense by a preponderance of the evidence. *See also Mask v. State*, 314 Ark. 25, 86 S.W.2d 91 (1993) (once the State meets its burden of proving the elements of an offense beyond a reasonable doubt, the burden shifts to the defendant to prove an affirmative defense by a preponderance of the evidence).

■ On appeal, our standard of review of a jury verdict rejecting the insanity defense is whether there was any substantial evidence to support the verdict. *Morgan v. State*, 333 Ark. 294, 971 S.W.2d 219 (1998). Substantial evidence is evidence of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture. *Id.* Moreover, this court will affirm the jury's verdict if there is any substantial evidence to support the verdict. *Id.*

Haynes recites the evidence adduced at trial and then merely asserts that he met his burden of proof by a preponderance of the evidence. That evidence consisted of Dr. Wetherby's essential repetition of the testimony she gave at the pretrial competency hearing. She noted that Haynes had been diagnosed at UAMS as having "psychotic disorder, not otherwise specified," and she pointed out that Haynes had been having aural and visual hallucinations at the time of the shooting. Dr. Wetherby also testified that Haynes was not fully oriented when she interviewed him, *i.e.*, that although he was aware of who he was and generally where he was, he did not know the season, date, day, state, country, town or specific location. She also testified as to the battery of tests she conducted on Haynes and concluded again that he suffered from numerous severe neuropsychological deficits, and thus could not appreciate the criminality of his conduct and could not appreciate the wrongfulness of what he was doing when he shot Shamone.

Haynes's mother, Pearline Murdock, also testified at trial. She averred that Haynes had undergone a personality change after his son was murdered and that he was extremely depressed and nervous. Murdock asserted that Haynes would not have shot Shamone "unless he snapped or something. This was totally out of control."

The State called Dr. Deyoub on rebuttal, and he reiterated much of his earlier testimony given at pretrial and during the State's

case-in-chief. He testified that he had conducted a forensic evaluation on Haynes, and he concluded that, although Haynes was depressed, he was not psychotic, and he could conform his conduct to the requirements of the law at the time of the shooting.

■ This court has upheld a trial court's denial of a motion for directed verdict on the affirmative defense of mental disease or defect, even where the medical testimony was uncontroverted that the defendant was a paranoid schizophrenic. *See, e.g., Davasher v. State,* 308 Ark. 154, 823 S.W.2d 863 (1992). In that case, this court wrote that it recognized that the medical evidence on the issue of insanity was highly persuasive; however, the court continued as follows:

> It has consistently been held . . . that a jury is not bound to accept opinion testimony of experts as conclusive, and it is not compelled to believe their testimony any more than the testimony of other witnesses. Even when several competent experts concur in their opinions, and no opposing expert evidence is offered, the jury is bound to decide the issue upon its own judgment. Testimony by expert witnesses is to be considered by the jury in the same manner as other testimony and in light of other testimony and circumstances in the case. The jury alone determines what weight to give the evidence, and may reject it or accept all or any part of it they it believes to be true. *Robertson v. State,* 304 Ark. 332, 802 S.W.2d 448 (1991); *Gruzen v. State,* 267 Ark. 380, 591 S.W.2d 342 (1979).

*Davasher,* 308 Ark. at 170. *See also Burns v. State,* 323 Ark. 206, 913 789 (1996); *Williams v. State,* 320 Ark. 67, 894 S.W.2d 923 (1995).

■ ■ Because there was conflicting testimony on the question of Haynes's mental state at the time of the offense, the trial court properly permitted the factual question to go to the jury. *See, e.g., Franks v. State,* 306 Ark. 75, 811 S.W.2d 301 (1991). Here, the jury apparently gave more weight and credibility to the testimony offered by Dr. Deyoub; it was entirely within its province to do so. *See Davasher, supra.*

The record has been examined for other error pursuant to Ark. Sup. Ct. R. 4-3(h) and none was found. Therefore, we affirm.

BROWN, J., concurs.