Jonah Vaughn JONES *v.* STATE of Arkansas

CR 03-1129                                             182 S.W.3d 485

Supreme Court of Arkansas
Opinion delivered May 27, 2004

*John W. Settle*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.

R AY THORNTON, Justice. This appeal arises from the conviction of appellant, Jonah Vaughn Jones, for possession of methamphetamine, a violation of Ark. Code Ann. § 5-64-401 (Supp. 2003) and a class C felony, and possession of drug paraphernalia, a violation of Ark. Code Ann. § 5-64-403 (Supp. 2003) and a

class C felony. Appellant was sentenced as an habitual offender, pursuant to Ark. Code Ann. § 5-4-501 (Supp. 2003), to eight years on the methamphetamine-possession charge and ten years on the drug-paraphernalia charge. On appeal, he challenges the sufficiency of the evidence on the two convictions, and he argues that the trial court erred in the penalty phase by failing to give correct jury instructions on the imposition of a fine. We affirm the convictions and remand for resentencing on the issue of an erroneous jury instruction given during the penalty phase of the trial.

On June 5, 2003, Fort Smith police officers were advised to look for a red Chevrolet pickup truck with Oklahoma license tags because the driver was suspected of unauthorized use of a vehicle. Officer Jeff Carter saw the vehicle, but was unable to stop it because he was transporting a prisoner at the time. He radioed Officer Eric Williams and told him that there were three occupants in the truck: a black male driver, a white female seated in the middle, and a white male on the passenger's side.

Officer Williams testified that he stopped the vehicle at 4:00 p.m. that day and recognized appellant as the driver of the vehicle. When appellant got out of the truck, Officer Williams arrested him. While conducting a pat-down search, Officer Williams found a syringe in the right front pocket of appellant's pants. At trial, Detective Paul Smith, an expert witness for the State, testified that syringes are commonly used to inject methamphetamine.

Another officer arrived at the scene and took the other male occupant, Mark Evans, into custody while Officer Williams conducted a search of the truck. During the search, Officer Williams seized five plastic bags with white residue that were behind the driver's seat. Cindy Moran, a chemist with the State Crime Laboratory, testified that the plastic bags contained methamphetamine.

Appellant was charged by an amended felony information with the offenses of possession of methamphetamine and possession of drug paraphernalia. Neither appellant nor Evans admitted that they owned the plastic bags. Officer Williams testified that he did not see anyone put anything behind the seat.

At trial following the State's case-in-chief, appellant moved for a directed verdict on the methamphetamine charge, arguing that there was insufficient evidence to prove that he was in constructive possession of the substance, or in the alternative, that there was no showing of a useable amount of methamphetamine

because of the weakness of the substance. Appellant also moved for a directed verdict on the drug-paraphernalia charge. The trial court denied both motions. Appellant renewed his motions for directed verdict after the defense rested, and the trial court again denied appellant's motions.

Appellant was found guilty by a jury of possession of methamphetamine and possession of drug paraphernalia. Prior to the sentencing phase of the trial, appellant objected to the trial court's giving the AMCI 2d 9202 jury instruction, which does not allow the jury to consider imposing only a fine. Appellant proffered modified jury instructions and verdict forms, but the trial court rejected these forms.

The jury then sentenced appellant to eight years for the offense of possession of methamphetamine and ten years for the offense of possession of drug paraphernalia. The trial court ordered the sentences to run consecutively. The judgment and commitment order was entered on June 10, 2003. Appellant brings his appeal from that order.

■ ■ Recently, in *Jordan v. State*, 356 Ark. 248, 147 S.W.3d 691 (2004), we articulated the standard of review for motions for directed verdict:

> It is well settled that we treat a motion for a directed verdict as a challenge to the sufficiency of the evidence. *Mills v. State*, 351 Ark. 523, 95 S.W.3d 796 (2003); *Williams v. State*, 346 Ark. 304, 57 S.W.3d 706 (2001). The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. *Haynes v. State*, 346 Ark. 388, 58 S.W.3d 336 (2001). On appeal, we view the evidence in the light most favorable to the State, considering only that evidence that supports the verdict. *Williams*, 346 Ark. 304, 57 S.W.3d 706.

*Jordan, supra.*

For his first point on appeal, appellant argues that the trial court erred in denying his motion for directed verdict on the constructive-possession charge. Specifically, appellant contends that there was insufficient evidence to sustain the charge of constructive possession of methamphetamine.

▮▮▮ We stated the rule regarding constructive possession of a controlled substance in *George v. State*, 356 Ark. 345, 151 S.W.3d 770 (2004):

> We have explained that the State need not prove that the accused physically possessed the contraband in order to sustain a conviction for possession of a controlled substance if the location of the contraband was such that it could be said to be under the dominion and control of the accused. Constructive possession may be established by circumstantial evidence. When seeking to prove constructive possession, the State must establish that the defendant exercised care, control, and management over the contraband. This control can be inferred from the circumstances, such as the proximity of the contraband to the accused, the fact that it is in plain view, and the ownership of the property where the contraband is found.

*George, supra* (citations omitted).

▮ Further, we have opined that joint occupancy of a vehicle, standing alone, is not sufficient to establish possession or joint possession. *Mings v. State*, 318 Ark. 201, 884 S.W.2d 596 (1994). There must be some other factor linking the accused to the drugs. *Id.* Other factors to be considered in cases involving automobiles occupied by more than one persons are: (1) whether the contraband is in plain view; (2) whether the contraband is found with the accused's personal effects; (3) whether it is found on the same side of the car seat as the accused was sitting or in near proximity to it; (4) whether the accused is the owner of the automobile, or exercises dominion and control over it; and (5) whether the accused acted suspiciously before or during the arrest. *Id.*

Keeping these well-established principles in mind, we turn to our review of the sufficiency of the evidence of appellant's constructive-possession conviction. Appellant concedes in his brief that the third and fourth factors are satisfied: that he was driving the vehicle and that the substance was in near proximity to the driver's seat. However, appellant argues that, under the above *Mings* factors, the substance was not in plain view, that it was not in appellant's personal effects, and that there was no testimony that he acted suspiciously during his arrest.

▮ Appellant's argument is unavailing because the third and fourth factors outweigh the others. According to the testimony of Officer Carter, he was notified that a black male was

driving a red Chevrolet pickup truck with Oklahoma tags. When Officer Carter stopped the vehicle, appellant was driving the vehicle. According to the testimony of Officer Williams, the five plastic bags with the white residue were found behind the driver's seat of the vehicle. These circumstances satisfy the third and fourth factors of constructive possession, as appellant was the driver of the vehicle, the drugs were found directly behind the driver's seat, and he exercised dominion and control over the vehicle. Additionally, a syringe, which was described as drug paraphernalia by Detective Smith, was found on appellant's person. Detective Smith testified that syringes are the most common method of injecting methamphetamine.

We agree with the State that *Dodson v. State*, 341 Ark. 41, 14 S.W.3d 489 (2000), is controlling precedent as to this case. In *Dodson*, appellant was accompanied by two other passengers when the vehicle was stopped by a police officer for a traffic violation. The police officer then saw a brown leather satchel protruding from the right side of the passenger's seat where another passenger had been sitting, and during a search, both marijuana and methamphetamine were found. A large sum of cash was also discovered. We held that the appellant in that case constructively possessed the controlled substances because, notwithstanding that the drugs were found on the other side of the vehicle, he was in close proximity to them, he was in control of the vehicle, and he acted suspiciously during arrest. *Id.*

Although there was no testimony that appellant in the present case acted suspiciously, we believe that *Dodson* applies because of the combined third and fourth *Mings* factors in addition to drug paraphernalia being found on appellant's person. Based upon our standard of review in viewing the evidence in the light most favorable to the State, we cannot say that the trial court erred in denying appellant's motion for directed verdict on the constructive-possession charge.

For his second point on appeal, appellant argues that the trial court erred in denying his motion for directed verdict on the constructive-possession charge for the lack of a usable amount of methamphetamine. Specifically, appellant contends that the State failed to show that appellant possessed a usable amount of methamphetamine in the five plastic bags to establish a violation of Ark. Code Ann. § 5-64-401(c).

There is no provision in our Controlled Substances Act, codified at Ark. Code Ann. § 5-64-101 *et seq.*, mandating that one must possess a usable amount of methamephetamine to support a conviction for possession. Nevertheless, we adopted a usable-amount criteria in *Harbison v. State*, 302 Ark. 315, 790 S.W.2d 146 (1990). Appellant relies on *Harbison* for the proposition that the quantity he possessed was too small to constitute a "useable [sic] amount." *Id.* The appellant in *Harbison* was found in possession of a bottle containing only cocaine dust or residue. A chemist testified that he found the substance inside two plastic drinking straws as being a trace amount of cocaine residue that was too small to weigh with the equipment at the state crime laboratory. We held that appellant could not be convicted of possession of cocaine. *Id.*

■ The present case, however, is distinguishable from *Harbison, supra*, because here there was a usable amount of methamphetamine. Unlike the circumstances in *Harbison, supra*, there was enough substance in the plastic bags to weigh and to test. Cindy Moran, a chemist at the Arkansas State Crime Laboratory, testified that during her drug analysis, one plastic bag contained .2472 grams of methamphetamine and nicotinamide, and the other four plastic bags contained .6367 grams of methamphetamine and nicotinamide.[1] Thus, appellant possessed a total of 0.8839 grams, or 883.9 milligrams, of a methamphetamine-nicotinamide compound. When asked on cross-examination whether there was a usable amount, Ms. Moran testified, "Well, we always say that if we can identify it, we can test it and we can get results, then, in our minds, yes, there was some [usable amount] there." Based upon the uncontroverted expert testimony of Ms. Moran, we conclude that the 883.9 milligrams constitutes a usable amount under *Harbison, supra*.

■ We have previously decided in *Piercefield v. State*, 316 Ark. 128, 871 S.W.2d 348 (1994), that, under Ark. Code Ann. § 5-64-401(a)(1)(i), the "measurable amount of the methamphetamine for the purpose of inferring intent includes the amount of the pure drug plus all adulterants." *Id.* We proceeded in that unanimous decision to hold that "the fact that Mr. Piercefield

---

[1] According to the expert testimony of Ms. Moran, nicotinamide is commonly used as a cutting agent for methamphetamine.

possessed more than 200 milligrams of a stimulant drug [methamphetamine]," *id.*, was sufficient to meet the test of sufficiency of the evidence. *See also Moore v. State*, 304 Ark. 257, 801 S.W.2d 638 (1990) (stating that a vial containing 100 milligrams of methamphetamine seized from appellant's person would support a conviction for possession of a controlled substance even in light of a *Harbison* challenge).

In the case before us, appellant possessed 883.9 milligrams of the methamphetamine compound, an amount that greatly exceeds the 200 milligrams of a methamphetamine compound that we found sufficient in *Piercefield, supra.* Therefore, we hold that the trial court did not err in denying appellant's motion for directed verdict on the methamphetamine-possession charge.[2]

For the third point on appeal, appellant argues with little analysis that the trial court erred in denying appellant's motion for directed verdict on the paraphernalia charge. Specifically, appellant contends that the State did not prove that the syringe found on appellant's person was ever analyzed for residue or for use. For that reason, appellant maintains that he did not violate Ark. Code Ann. § 5-64-403(c)(1)(A)(I) (Supp. 2003).

It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to inject methamphetamine. Ark. Code Ann. § 5-64-403(c)(1)(A)(I). The term, *drug paraphernalia*, specifically includes "[h]ypodermic syringes . . . intended for use, or designed for use in parenterally injecting controlled substances into the human body[.]" Ark. Code Ann. § 5-64-101(v)(11) (Repl. 1997).

---

[2] We note that the usable-amount term, as promulgated by *Harbison, supra*, does not stand for the proposition that there must be a usable amount sufficient to produce a chemically-induced behavioral, hallucinogenic, or otherwise altered state. Additionally, other jurisdictions, as well as the Arkansas Court of Appeals, have interpreted the usable-amount standard to include weight-based standards. *See Sinks v. State*, 44 Ark. App. 1, 864 S.W.2d 879 (1993) (holding that 0.024 grams of cocaine was usable because the cocaine was capable of quantitative analysis, could be seen with a naked eye, was tangible and could be picked up, and was a clearly measurable amount that satisfied the requirements of *Harbison*); *Kent v. State*, 562 S.W.2d 855 (Tex. Cr. App. 1978) (citing *Tomlin v. State*, 338 S.W.2d 735 (Tex. Cr. App. 1960), which overruled the determination of insufficiency in two cases cited in *Harbison, supra*, and holding that the drug was quantitatively measurable).

The statute also requires that the fact-finder determine whether the object is drug paraphernalia under the following factors:

> (1) statements by an owner or by anyone in control of the object concerning its use; (2) prior convictions, if any, of an owner, or of anyone in control of the object, under any state or federal law relating to any controlled substance; (3) the proximity of the object, in time and space, to a direct violation of the controlled substances act; (4) the proximity of the object to the controlled substances; (5) the existence of any residue of controlled substances on the object; (6) direct or circumstantial evidence of the intent of the owner, or of anyone in control of the object, to deliver it to persons whom he knows, or should reasonably know, intend to use the object to manufacture a controlled substance; (7) instructions, oral or written, provided with the object concerning its use; ... (13) [t]he existence and scope of legitimate uses for the object in the community; and (14) expert testimony concerning its use.

Ark. Code Ann. § 5-64-101(v)(1).

Appellant relies upon *Gilmore v. State*, 79 Ark. App. 303, 87 S.W.3d 805 (2002), which lays out the above statutory factors when considering whether an object is drug paraphernalia. With little analysis, appellant argues that "none of [the factors] would reflect that appellant was in possession of drug paraphernalia."

Appellant's argument is not persuasive. Here, Officer Williams testified that during his pat-down search of appellant, he discovered a syringe in appellant's front pants pocket. Detective Paul Smith, a narcotics detective with the Fort Smith Police Department who was assigned to the Drug Enforcement Administration Task Force, testified that the syringe is most commonly used to inject methamphetamine. On cross-examination, Detective Smith testified that there was no residue in the syringe that would indicate that it had yet been used.

Under Ark. Code Ann. Code Ann. § 5-64-101(v)(11), a syringe is deemed as drug paraphernalia when it is intended to be used to inject a controlled substance. Additionally, under Ark. Code Ann. § 5-64-101(v), the syringe in appellant's pocket was in close proximity to the methamphetamine found in the plastic bags behind appellant's driver's seat. We have found that syringes are drug paraphernalia when in close proximity to methamphetamine. *Stanton v. State*, 344 Ark. 589, 42 S.W.3d 474

(2001) (holding that the evidence clearly established that a syringe was considered drug paraphernalia when found inside a residence that also contained methamphetamine). Nothing in the record reveals that appellant possessed the syringe for a legitimate use.

██ Therefore, based upon our standard of review, the evidence is of sufficient force or character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture under *Haynes, supra*. For these reasons, we affirm on this point.

For his fourth point on appeal, appellant argues that the trial court erred in failing to give appellant's proffered jury instructions on the imposition of fines after the finding that appellant was an habitual offender. Specifically, appellant contends that Arkansas statutes allow the imposition of a fine without imprisonment, notwithstanding a defendant's status as an habitual offender under Ark. Code Ann. § 5-4-501 *et seq.*

After the guilt phase of the trial, the trial court instructed the jury that appellant had ten prior felony convictions and classified him as an habitual offender under Ark. Code Ann. § 5-4-501 *et seq.* Appellant objected to the trial court's giving the AMCI 2d 9202 jury instruction, which provided that appellant was subject to three to thirty years' imprisonment on each count. Appellant argued that AMCI 2d 9202 did not give the jury the option of assessing a fine alone.

AMCI 2d 9202 provides:

> You have found [appellant] guilty of the offense of _____.
> The State has also alleged that [appellant] is subject to an extended term of imprisonment as an habitual offender. It is my duty to instruct you that [appellant] has previously been convicted of _____ felonies and is classified as an habitual offender.
>
> The offense of _____ when committed by an habitual offender is punishable by imprisonment in the Arkansas Department of Correction for a term of _____.

*Id.*

This jury instruction was based upon the language of Ark. Code Ann. § 5-4-104 (1987), which provided in pertinent part:

> (d) A defendant convicted of an offense other than a Class Y felony, capital murder, treason, or murder in the second degree, may

be sentenced to any one or more of the following, except as precluded by subsection (e) of this section:

(1) Imprisonment; or

(2) Probation; or

(3) Pay a fine, as authorized by §§ 5-4-201-5-4-203; or

(4) Make restitution; or

(5) Imprisonment and to pay a fine.

\* \* \*

(e)(4) The court shall not suspend imposition of sentence, place the defendant on probation, or sentence him to pay a fine if it is determined, pursuant to § 5-4-502, that the defendant has previously been convicted of two (2) or more felonies.

Ark. Code Ann. § 5-4-104.

We interpreted subsection (e)(4), which has since been repealed, in *Kinsey v. State*, 290 Ark. 4, 716 S.W.2d 188 (1986), where we stated:

The last sentence is relied on by appellant for the proposition that the court cannot impose a fine on an habitual offender. This sentence is a limitation on the court's exercise of the leniency allowed in the first part of the statute. Read in context, it obviously means that the court is not allowed to "only" impose a fine in place of a prison sentence when the defendant is an habitual offender. There is no conceivable reason why the legislature would allow fines to be assessed against first offenders in addition to a prison sentence, and not allow fines for habitual offenders.

*Id. See also Adams v. State*, 25 Ark. App. 212, 755 S.W.2d 579 (1988) (interpreting the language of the 1987 statute).

In 1993, the General Assembly repealed subsection (e)(4). 1993 Ark. Acts 532, § 9; 550, § 9. Ark. Code Ann. § 5-4-104(d) (Supp. 2003) now provides in pertinent part:

(d) A defendant convicted of an offense other than a Class Y felony, capital murder, § 5-10-101, treason, § 5-51-201, or murder in

the second degree § 5-10-103, may be sentenced to any one (1) or more of the following, except as precluded by subsection (e) of this section:

(1) Imprisonment as authorized by §§ 5-4-401-5-4-404; or

(2) Probation as authorized by §§ 5-4-301-5-4-311; or

(3) Pay a fine as authorized by §§ 5-4-201-5-4-203; or

(4) Make restitution as authorized by the provisions of § 5-4-205; or

(5) Imprisonment and to pay a fine.

Ark. Code Ann. § 5-4-104(d).

■  Here, under subsections (1), (3), and (5), respectively, the statute allows for imprisonment, payment of a fine, or imprisonment and a payment of a fine. However, AMCI 2d 9202 allows for the jury to consider only the possibility of imprisonment when the defendant is an habitual offender. It does not give the jury the option of considering only the payment of a fine, as authorized by Ark. Code Ann. § 5-4-104(d)(3). Thus, AMCI 2d 9202 does not accurately reflect the law in effect after 1993. We have said that our criminal jury instructions do not trump the plain language of our criminal statutes. *McCoy v. State*, 348 Ark. 239, 240, 74 S.W.3d 599, 600 (2002). We further note that the State concedes the trial court's error with respect to this point on appeal regarding jury instructions.

■  For the foregoing reasons, we hold that the trial court erroneously instructed the jury under AMCI 2d 9202. Accordingly, we affirm the convictions in the guilt phase, but remand for resentencing in the penalty phase.

Affirm in part; reverse and remand in part.

GLAZE, CORBIN, and IMBER, JJ., dissent.

ANNABELLE CLINTON IMBER, Justice, dissenting. Today the majority opinion overrules *Harbison v. State*, 302 Ark. 315, 790 S.W.2d 146 (1990), by adopting an analysis specifically rejected by the majority opinion in that case. I agree with the majority decision in *Harbison* and must, therefore, respectfully dissent.

In *Harbison,* we held that the State must prove a defendant possessed a "usable amount" of a controlled substance to support a conviction for possession of a controlled substance under Ark. Code Ann. § 5-64-401(c). *Id.* We looked to the statutory language criminalizing possession of a controlled substance and determined that the legislation was aimed at preventing the "use of or trafficking in drugs." *Id* at 323, 790 S.W.2d at 151. In crafting the opinion, this court rejected the position adopted by a majority of states that a finding of an "identifiable" amount of a controlled substance is sufficient to support a conviction for possession. Instead, we adopted a standard that requires a "useable" amount and stated:

> We recognize the possibility that one may be in possession of an amount of a controlled substance sufficient to permit knowledge of its presence and yet still not be in possession of a useable amount.

*Id.* at 322, 790 S.W.2d at 151. The dissent disagreed, stating that "a more dependable standard would be whether the amount is sufficient to permit identification of the substance." *Id.* at 324, 790 S.W.2d at 151 (Hays, J., dissenting). Today the majority supplants the "usable amount" standard with an "identifiable" standard stating "there was enough substance in the plastic bags to weigh and test." In *Harbison,* we adopted a "usable amount" standard, not a "weigh and test" standard.[1]

We adopted the "usable amount" standard under the analysis provided by the Arizona Supreme Court in *State v. Moreno,* 92 Ariz. 116, 374 P.2d 872 (1962), and explained that the Arizona Supreme Court "held that 'in those cases where the amount is incapable of being put to *any effective use*' the evidence is insufficient to support a conviction." *Harbison v. State,* 302 Ark. at 321, 790 S.W.2d at 150 (1990)(emphasis added) (quoting *State v. Moreno, supra*). The Arizona courts have continued to apply the "usable amount" standard to possession cases. *See State v. Quinones,* 105 Ariz. 380, 465 P.2d 360 (1970); *State v. Urias,* 8 Ariz.App. 319, 446 P.2d 18 (1968). As reflected in the decisions by the Arizona

---

[1] In a footnote, the majority attempts to call into doubt the holding in *Harbison* by suggesting that the Texas Court of Criminal Appeals has overruled cases mentioned in that decision. Yet, in adopting the "usable amount" standard, the *Harbison* court did not rely on either *Greer v. State,* 163 Tex.Cr.R. 377, 292 S.W.2d 122 (1956) or *Pelham v. State,* 164 Tex.Cr.R. 226, 298 S.W.2d 171, 173 (1957).

appellate courts, in order to sustain a conviction for possession of narcotics when the amount of narcotic is so small as not to be within the realm of an uninformed layman's knowledge of its usability, there must be evidence as to the sufficiency of the narcotic to be usable under the known practice of narcotic addicts. *See State v. Quinones, supra; State v. Urias, supra.*

In this case, Cindy Moran, a chemist at the Arkansas State Crime Laboratory, testified to the amount of substance seized. With respect to the five baggies, Ms. Moran testified that:

> On [Bag 1], it was .2472 grams of methamphetamine and nicoti-namide. [Bags 2 through 5] was 0.3 percent methamphetamine with nicotinamide and the weight of the powder was .6367 grams.

Ms. Moran went on to testify that she separated Bag 1 and did not perform a quantitative analysis on it because the substance found was weaker than the substance in Bags 2 through 5. She then testified that the percentage of methamphetamine found in Bags 2 through 5 was 0.3 percent. The total substance weighed .6367 grams. Thus, Ms. Moran concluded that there were only 1.9 milligrams of methamphetamine in Bags 2 through 5. She also testified that Bag 1 could not have contained more that 0.3 percent methamphetamine. Therefore, a maximum of .7 milligrams of methamphetamine could have been found in Bag 1, and the total weight of controlled substance was not more than 2.6 milligrams.

After determining the total amount of illegal substance seized, the following colloquy ensued:

> Q. Is there a useable amount?
>
> A. Well, we always say that if we can identify it we can test it and we can get results, then, in our minds, yes, there was some there.
>
> Q. Are you trying to tell this jury that you know that this amount could be used to intoxicate a person or place them under the influence of methamphetamine?
>
> A. I can't testify to that.

In an attempt to salvage its opinion, the majority inserts the critical words "usable amount" into Ms. Moran's statement. Her testimony,

however, makes it abundantly clear that she could only testify that there "was some" methamphetamine and that the total substance could be measured. Nothing in Ms. Moran's testimony can be construed as evidence that the substance seized could be put to "any effective use." *See Harbison v. State,* 302 Ark. at 321, 790 S.W.2d at 150. Our standard established in *Harbison* requires the State to prove more than an "identifiable" or "measurable and testable" amount; rather, the State must show the amount to be "usable."

The majority citation to *Moore v. State,* 304 Ark. 257, 801 S.W.2d 638 (1990), is inapposite. In that case, the defendant challenged the sufficiency of the evidence to support his conviction for possession of a controlled substance arguing that the State failed to show he possessed a "useable amount." *Id.* We held that the defendant failed to properly preserve the specific objection by only making a general motion for a directed verdict. *Id.* Nonetheless, we indicated that a vial containing 100 milligrams of methamphetamine would have been "sufficient to overcome a *general* motion for directed verdict as made by the defendant." *Id.* at 266, 801 S.W.2d at 643 (emphasis added). In this case, however, Mr. Jones specifically argued in his motion for directed verdict that the State failed to prove the substance seized was a "useable amount." In any event, finding 2.6 milligrams of methamphetamine from the residue in five different baggies is not analogous to finding 100 milligrams of methamphetamine in a vial.

Likewise, the majority's reliance on *Piercefield v. State,* 316 Ark. 128, 871 S.W.2d 348 (1994), is misplaced. In that case, the defendant was charged with possession of a controlled substance with intent to deliver, not mere possession. *Id.* This court has never applied the "usable amount" standard to possession with intent to deliver cases. Indeed, the court has recognized that based on the specific statutory language, only a specified "measurable amount" of controlled substance is necessary to infer an intent to deliver. *Id;* Ark. Code Ann. § 5-64-401(a)(1) (Supp. 2003) (defining the presumption by "aggregate weight"). Despite our holding in *Harbison, supra,* over a decade ago, the General Assembly has not amended the statutory language in Ark. Code Ann. § 5-64-401(c) to employ a weight-based standard.

In addition, this court has held that the prosecutor's failure to introduce evidence of a usable amount did not preclude a conviction for possession with intent to deliver in view of a trafficking scheme observed by police detectives. *See Conley v. State,* 308 Ark. 70, 821 S.W.2d 783 (1992). Indeed, the Arizona

courts have similarly distinguished between possession of a controlled substance and sale of a controlled substance. *See State v. Ballinger,* 110 Ariz. 422, 520 P.2d 294 (1974). Based on inapposite cases, the majority implants a weight-based standard into Ark. Code Ann. § 5-64-401(c) where none exists.

The *Urias* case, where the Arizona court reversed a conviction for possession, is indistinguishable from the case at bar. There, the State presented evidence showing that there was approximately 533 milligrams and 582 milligrams of a substance containing 18% heroin by chemical analysis. However, there was no testimony concerning the usability of the narcotic. *State v. Urias, supra.* The court explained that a little over 1,000 milligrams of which 18% was heroin by analysis was such a small amount as not to be within the realm of an uninformed layman's knowledge of its usability. *State v. Urias, supra.* Here, we have less narcotic than that which was at issue in *Urias;* there was less than 1,000 milligrams of which not more than .3% was methamphetamine by chemical analysis. In addition, like the prosecution in *Urias,* the State in this case provided no evidence of usability.

In order to effectuate the intent of the General Assembly in criminalizing possession of a controlled substance, that is, preventing the use of or trafficking in drugs, the State must provide some evidence of the drug's usability. Otherwise, a person possessing a pound of ordinary cooking flour containing any indication of methamphetamine would be guilty of possession of a controlled substance. Such a holding eviscerates our holding in *Harbison* and borders on a strict liability standard.

In my opinion, where the amount of narcotics involved is so small as not to be within the realm of an uninformed layman's knowledge of usability, there must be evidence presented by the State as to its "usability." *See State v. Quinones,* 105 Ariz. 380, 465 P.2d 360 (1970). The State provided no such evidence in this case.

GLAZE, J., and CORBIN, J., join.