2012 Ark. App. 597

**Dennis ANDREWS, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 12–274.**

Court of Appeals of Arkansas.

Oct. 24, 2012.

---

350

Gary J. Mitchusson, Forrest City, and Jennifer Hicky Collins, for appellant.

Dustin McDaniel, Att'y Gen., by: Brad Newman, Ass't Att'y Gen., for appellee.

DOUG MARTIN, Judge.

Appellant Dennis Andrews was charged with one count of theft of property, one count of first-degree criminal mischief, and one count of impairing the operation of a vital public facility. A Jackson County jury convicted him of theft of property and criminal mischief but acquitted him of the count of impairing the operation of a vital public facility. We affirm Andrews's convictions as modified.

The three charges arose from the removal of some quantity of "neutral wire" from utility poles owned by Farmers Electric Co–Op in Jackson County. The original information specifically related those offenses to the date of June 13, 2010. On the morning of Andrews's jury trial, the State orally moved to amend the information to expand the date range of the offenses to encompass June 10 through June 13, 2010. Andrews objected, arguing that he had prepared his defense based on the

original information, in which the State related the offenses only to June 13. The State replied that both dates were listed in the affidavit that had supported the issuance of the arrest warrant, so Andrews could hardly claim prejudice or |₂surprise. Andrews then noted that there were two separate theft allegations but only one theft charge, and he inquired whether the State was making it two separate charges; the State replied that it was not. The court overruled Andrews's objection to the amendment of the information, and the matter proceeded to trial.[1] As noted above, the jury subsequently found Andrews guilty of the theft and criminal-mischief charges but acquitted him on the count of impairing a vital government function. Andrews was sentenced to three years on each count, which the circuit court ordered to run consecutively, and a fine of $5,000.

Andrews's first argument on appeal is that the circuit court erred in allowing the State to present testimony from Gene Swett, the general manager of Farmers Electric, concerning a repair estimate for the damage done to the utility lines. Andrews contends that the State's failure to divulge the content of Swett's testimony prior to trial constituted a violation of the discovery rules, and thus the evidence should not have been admitted; without this particular evidence, Andrews continues, the evidence was insufficient to support the verdicts against him. Because, however, double-jeopardy considerations require this court to consider a challenge to the sufficiency of the evidence first, *see Chunestudy v. State*, 2012 Ark. 222, 408 S.W.3d 55, we consider Andrews's sufficiency argument prior to his discovery-rule argument.

■ Andrews was convicted of one count of theft and one count of first-degree criminal mischief. A person commits the offense of theft of property if he takes or exercises unauthorized control over or makes an unauthorized transfer of an interest in the property |₃of another person with the purpose of depriving the owner of the property. Ark.Code Ann. § 5–36–103(a)(1) (Repl.2006).[2] Theft of property is a Class C felony if the value of the property is less than $2,500 but more than $500. Ark.Code Ann. § 5–36–103(b)(2)(A) (Repl.2006). A person commits the offense of criminal mischief in the first degree if he purposely and without legal justification destroys or causes damage to any property of another. Ark.Code Ann. § 5–38–203(a)(1) (Repl.2006). First-degree criminal mischief is a Class C felony if the amount of actual damage is more

---

1. Andrews does not argue on appeal that the circuit court erred in allowing the State to amend the information.

2. At the time Andrews was charged with these offenses in 2010, the statutes provided that theft of property was a Class C felony if the property stolen had a value between $500 and $2,500. Ark.Code Ann. § 5–36–103(b)(2) (Repl.2006). First-degree criminal mischief was a Class C felony if the value of the damage was $500 or more. Ark.Code Ann. § 5–38–203(b)(1) (Repl.2006). These property-value figures, however, were amended in 2011 to reflect a range, for a Class C felony, from $5,000 to $25,000. Act of Mar. 22, 2011, No. 570, §§ 23(b)(2)(A), 29(b)(3), 2011 Ark. Acts 1877, 1888. In their briefs before this court, both Andrews and the State cite the $5,000-to-$25,000 figure as the appropriate range for determining whether Andrews committed a Class C felony, which is clearly improper. *See Nickelson v. State*, 2012 Ark. App. 363, at 4 n. 1, 417 S.W.3d 214, (where the theft offense occurred prior to the 2011 amendment, it was subject to the version of the statute in effect at that time). Given our ultimate disposition, by which we reduce Andrews's convictions to Class A misdemeanors, this discrepancy ultimately has no practical effect; however, we wish to call counsels' attention to the error.

than $500. Ark.Code Ann. § 5–38–203(b)(3) (Repl.2006). Proof that the stolen property had a value within these statutory ranges is necessary to sustain these charges as Class C felonies. *See, e.g., Coley. v. State,* 302 Ark. 526, 528, 790 S.W.2d 899, 901 (1990).

The evidence introduced by the State at trial showed the following. Sometime in June 2010, Darlene Madden, a meter reader for Farmers Electric, noticed a rope hanging from a power line located on Highway 145 near the Cache River Bridge. Madden noted that the rope, which had a short length of yellow chain attached to it, was hanging from the second line up, about ten or twelve feet from the utility pole. Madden contacted Gene Swett, the general manager of Farmers Electric, to report that there was something suspicious hanging on his power lines.

Swett reported the theft of the neutral wire from the Cache River Bridge area to the sheriff's department on June 11, 2010. Swett sent a serviceman to that location and had him retrieve the rope that Madden had discovered. Investigator David Platt of the Jackson County Sheriff's Office went to the Cache River Bridge and observed that eight spans of wire had been cut from the poles.

A "couple of days after that," according to Swett's testimony, there was a second "instance of some wire being taken." This theft, which was reported to the sheriff's department on June 14, 2010, occurred in the vicinity of Beedeville, Arkansas. Jackson County Sheriff's Department Officer Greg Ivey went to Swett's office to investigate this theft. Swett gave Ivey the piece of rope with a hook and three links of plastic chain that had been recovered from the Cache River Bridge theft.

Platt and Ivey began investigating the case and, after discovering that Andrews had sold a quantity of copper wire to Simmons Scrap Metal on June 5, 2010, developed Andrews as a suspect. Platt and Ivey located Andrews in the parking lot of a church on June 15, 2010. Although they initially intended only to talk to him at that time, both Platt and Ivey observed barrels containing coiled copper wire in the bed of Andrews's truck. In addition to the barrels of wire, there was a length of yellow-colored plastic chain and a pair of wire cutters. The officers arrested both Andrews and the man who was with him, Brian Jones. Both Platt and Ivey acknowledged that there were two separate theft reports, one filed on June 11, 2010, and the other filed on June 14, 2010. Neither, however, could give an exact date of when either theft actually occurred.

At trial, Swett testified, over Andrews's objection, that he had prepared an estimate of the costs to replace the stolen wire. Swett stated that the repairs to the two damaged sections of wire totaled slightly more than $12,125. On cross-examination, Swett reiterated that the number that he gave for damages "was a summation of the two locations, based on our in-house work order."

The State also called Brian Jones to testify at trial. Jones admitted that he had stolen the wire from the Cache River Bridge area, stating that Andrews was with him and that they had stolen "probably eight to twelve spans of neutral wire that night." Jones identified the rope and short fragment of yellow chain, explaining that he and Andrews left the rope and chain hanging from the wire because the chain broke and "slingshotted back up and was out of reach." On cross-examination, Jones was adamant that Andrews "only stole wire with me once."

Following the State's presentation of its case, Andrews moved for a directed verdict, arguing that the proof showed that

there were apparently two separate thefts in different parts of the county, but there had only been proof linking Andrews to one of the thefts—the one committed with Jones. Andrews also argued that there had been no proof presented as to the value of the wire that could be attributed to each theft. Andrews further argued as follows:

[T]he State is alleging, and [the court] allowed [the State] to amend today to do so, two separate incidents. That there is no differentiation in the amount of the damage claimed for one versus the other. And it is the State's burden to prove amount, your honor. And in the failure to do so we shouldn't be forced to speculate as to how much should be applied to one versus the other offense. There is no proof whatsoever to tie [Andrews] to the second alleged theft, which is part of the number that Mr. Swett testified to, whatsoever.

The circuit court denied Andrews's motions, and Andrews rested without presenting proof and renewed his motions, which the circuit court again denied.

On appeal, Andrews argues that there was insufficient evidence to support his theft and criminal-mischief convictions because the State failed to introduce evidence of the damages and value elements of those crimes. Our supreme court has set forth the well-settled standard of review for challenges to the sufficiency of the evidence:

We treat a motion for directed verdict as a challenge to the sufficiency of the evidence. This court has repeatedly held that in reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the State and consider only the evidence that supports the verdict. We affirm a conviction if substantial evidence exists to support it. Substantial evidence is

that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture.

*Navarro v. State*, 371 Ark. 179, 186, 264 S.W.3d 530, 535 (2007) (citations omitted); *Ali v. State*, 2011 Ark. App. 758, 2011 WL 6064865.

The crux of Andrews's argument is that, while the State put on proof to link him to the Cache River Bridge theft that occurred on June 10, 2011, the State failed to put on any evidence that linked him to the June 13, 2011 Beedeville theft. In addition, Andrews urges that the only evidence offered by the State as to the value of the stolen property was Gene Swett's testimony that it cost $12,125 to repair *both* locations. Andrews notes that Swett could not divide that cost up between the two locations or say how much was attributable to each location. Thus, while the evidence showed the combined damages for two thefts, there was no evidence linking Andrews to one of them, and the jury was accordingly left to speculate "how much of that figure was attributable to each incident, how much was attributable to the theft of wire, and how much was attributable to damage from criminal mischief." We agree.

Having examined the transcript in detail, we conclude that, while there is clearly proof of Andrews's involvement with the Cache River Bridge theft—Jones's testimony and the fact that the chain that was left dangling from the wires there matched the chain that was found in the back of Andrews's truck—there is no evidence in the record that links Andrews to the June 13 Beedeville theft. Not one witness testified that Andrews was seen in that area or that there was any physical evidence (such as the chain and rope from the Cache

River Bridge theft) linking Andrews to the Beedeville theft.

The only evidence that could even have remotely linked Andrews to the June 13 theft was the fact that there was a large quantity of copper wire in the back of his truck. Our concern with that, however, is that the State failed to produce any evidence that would show how much wire, whether by weight or length, was stolen from the Cache River Bridge;[3] how much wire was stolen from Beedeville; or how much wire was found in Andrews's truck. Stated another way, there was no evidence that the wire in Andrews's truck was the wire from the Beedeville theft. The wire could all have been from the Cache River Bridge theft. Because the State did not put on any proof as to the amount of wire stolen from each location or any proof that tied Andrews to Beedeville, the jury necessarily had to resort to |8speculation to reach the conclusion that the wire in Andrews's possession came from both sites.

Further, the theft and criminal-mischief charges were brought against Andrews as Class C felonies, which required the State to prove that the value of the property stolen or damaged had a value between $500 and $2,500 for the theft charge, and in excess of $500 for the criminal-mischief charge. Swett's testimony only provided an aggregate sum of how much it cost to repair both damaged sites. Without evidence linking Andrews to the Beedeville theft, without evidence as to what proportion of wire came from each theft, and without evidence as to what the repairs at each separate theft site cost, however, the

jury was again forced to speculate as to the value of the wire from the single theft—the Cache River Bridge theft—that the State proved Andrews had committed.

Simply stated, the State failed to prove that Andrews either exercised control over property worth between $500 and $2,500 (theft) or destroyed or caused damage to property in excess of $500 (criminal mischief). Because, however, there was substantial evidence that Andrews committed the offenses of theft and criminal mischief with regard to the Cache River Bridge incident, and there is no minimum property value necessary for misdemeanor theft of property, see Ark.Code Ann. § 5–36–103(b)(4) and Gines v. State, 2009 Ark. App. 628, 2009 WL 3153254, or first-degree criminal mischief, see Ark.Code Ann. § 5–38–203(b)(2),[4] we modify |9Andrews's Class C felony convictions to Class A misdemeanor convictions, and affirm the convictions as modified.[5]

▮ In his final argument on appeal, Andrews argues that the trial court erred in failing to give his proffered jury instruction allowing the jury to consider imposing a fine without imprisonment, notwithstanding his status as a habitual offender. The State concedes error on this point.

Following Andrews's conviction, the circuit court instructed the jury that Andrews had at least four prior felonies and was classified as a habitual offender under Arkansas Code Annotated section 5–4–501. Andrews objected to the trial court's instructing the jury with AMI Crim.2d 9202, which provides that a Class C felony offense, when committed by a habitual of-

3. There was testimony that about eight "spans" were stolen, but no one ever offered proof of how much wire comprises a "span."

4. Section 5–36–103(b)(4) (Repl.2006) provides that theft of property is a Class A misdemeanor if the value of the properly if less than $500. First-degree criminal mischief is a

Class A misdemeanor "if otherwise committed." § 5–38–203(b)(2) (Repl.2006).

5. Because we reach this conclusion, it is unnecessary to address Andrews's discovery-violation argument.

fender, is punishable by imprisonment in the Arkansas Department of Correction for a term of three to thirty years *and* a fine of up to $10,000. The court rejected Andrews's proffered instruction, which would have informed the jury that the punishment range was three to thirty years' imprisonment, *or* a fine, *or* both a term of imprisonment and a fine. After being instructed, the jury sentenced Andrews to a term of three years' imprisonment and a $2,500 fine on each conviction, which the circuit court determined should be imposed consecutively.

The State concedes error on this point, agreeing that the supreme court has held that AMI Crim.2d 9202 does not accurately reflect the law. *Jones v. State,* 357 Ark. 545, 558, 182 |₁₀S.W.3d 485, 492 (2004).[6] The sentencing procedures for habitual offenders set forth in section 5–4–501, however, only apply to sentencing for felony offenses. Because we have modified Andrews's felony convictions to misdemeanor convictions, we therefore sentence him to one year in the county jail. *See* Ark.Code Ann. § 5–4–402(b) (Repl.2006); *Young v. State,* 2009 Ark. App. 101, at 2, 2009 WL 398159.

Affirmed as modified.

VAUGHT, C.J., and GLOVER, J., agree.

---

**6.** In *Jones, supra,* the supreme court noted that, for defendants convicted of felony offenses other than Class Y felonies, capital murder, treason, or second-degree murder, Arkansas Code Annotated section 5–4–104(d) authorized sentences of imprisonment, the payment of a fine, or imprisonment and the payment of a fine. AMI Crim.2d 9202, however, "allows for the jury to consider only the possibility of imprisonment when the defendant is an habitual offender. It does not give the jury the option of considering only the payment of a fine, as authorized by Ark.Code Ann. § 5–4–104(d)(3)." *Jones,* 357 Ark. at 558, 182 S.W.3d at 492. Thus, the court held that AMI Crim.2d 9202 did not accurately reflect the law. *Id.*