Cite as 2019 Ark. App. 519

# ARKANSAS COURT OF APPEALS
DIVISION I

**No.** CR-19-410

| | |
|---|---|
| CHRISTOPHER HOOTEN | **Opinion Delivered:** November 6, 2019 |
| APPELLANT | APPEAL FROM THE CRAWFORD COUNTY CIRCUIT COURT [NO. 17CR-17-1253] |
| V. | |
| STATE OF ARKANSAS | HONORABLE MICHAEL MEDLOCK, JUDGE |
| APPELLEE | AFFIRMED |

## PHILLIP T. WHITEAKER, Judge

Christopher Hooten was convicted by a Crawford County jury of aggravated assault, first-degree criminal mischief, resisting arrest, and fleeing (both on foot and by vehicle) and was sentenced as a habitual offender.[1] Hooten appeals only his criminal-mischief and resisting-arrest convictions, claiming that the trial court erred in denying his motions for a directed verdict on those charges. We affirm.

On appeal, a motion for directed verdict is treated as a challenge to the sufficiency of the evidence. *Robinson v. State*, 2017 Ark. App. 689, 537 S.W.3d 765. When the sufficiency of the evidence is challenged, we view the evidence in the light most favorable to the verdict and consider only the evidence supporting it under our standard of

---

[1]Hooten was also charged with tampering with physical evidence; possession of drug paraphernalia; DWI; and possession of benzodiazepines. The State dropped the possession charges; he was acquitted of the tampering-with-physical-evidence charge; and the trial court directed a verdict on the DWI charge.

review. *Groomes v. State*, 2019 Ark. App. 408, 586 S.W.3d 196. We will affirm if the finding of guilt is supported by substantial evidence. *Id.* Substantial evidence is evidence of such sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Id.* With this standard in mind, we turn to review the evidence presented to the jury.

On November 22, 2017, Hooten was involved in a high–speed chase on Interstate 40. State Trooper Ben Ibarra initially clocked Hooten's vehicle traveling 87 miles per hour. Trooper Ibarra activated his blue lights and attempted a traffic stop. Hooten refused to pull over, and a chase ensued. During the chase, Hooten's speed fluctuated between 80 and 130 miles per hour. Trooper John Bass joined the pursuit. Because Hooten refused to stop, troopers then deployed spike strips along the interstate to deflate the tires on Hooten's vehicle. After hitting the spike strips, Hooten continued to travel over 90 miles per hour on the vehicle's rims. When the deployment of spike strips did not work, Trooper Bass attempted to drive in front of Hooten to box him in, hoping to force him to slow down and come to a stop. Instead of slowing down or stopping, Hooten attempted to pass Trooper Bass. When he was unable to do so, he rammed Trooper Bass's car multiple times. Eventually, the troopers decided to perform a PIT[2] maneuver to end the pursuit. Trooper Bass executed the maneuver, which caused Hooten's vehicle to stop in the median ditch.

---

[2]PIT stands for "Precision Immobilization Technique." A trooper executes a PIT maneuver by nudging the speeding vehicle's rear end with the front quarter panel of the patrol car, forcing the vehicle to turn at a 90-degree angle. This causes the transmission to lock up so that the driver cannot put the vehicle back into drive. At that point, the vehicle is immobilized.

With his vehicle immobilized, Hooten exited the vehicle and fled on foot across the eastbound traffic. Trooper Ibarra followed with his gun drawn. When Hooten reached a tree line across the interstate, he encountered a fence. He stopped and turned to face Trooper Ibarra. Trooper Ibarra holstered his weapon and attempted to restrain him. Hooten refused to comply, and a struggle ensued. During the scuffle, Trooper Ibarra and Hooten fell to the ground. The scuffle continued on the ground, making it difficult for Trooper Ibarra to place Hooten in handcuffs. At some point during the struggle with Hooten, Trooper Ibarra's microphone clip broke off his belt. Hooten was eventually subdued and placed under arrest.

Later, Trooper Bass had the damage to the passenger door of his vehicle repaired with the costs exceeding $2,000. Based on this evidence, the jury convicted Hooten of aggravated assault, first-degree criminal mischief, resisting arrest, and fleeing (both on foot and by vehicle).

On appeal, Hooten challenges only his convictions for criminal mischief and resisting arrest, contending that the State failed to present sufficient evidence to support either conviction.[3] A person commits criminal mischief in the first degree if he or she "purposely and without legal justification destroys or causes damage to any property of another." Ark. Code Ann. § 5-38-203(a)(1) (Repl. 2013). This offense is a Class D felony if the amount of

---

[3]At the close of the State's case and at the close of all the evidence, Hooten moved for a directed verdict on the charges of criminal mischief and resisting arrest. He did not make directed-verdict motions on the charges of aggravated assault, fleeing on foot, or fleeing in a vehicle. Accordingly, the sufficiency of the evidence as to these charges is not an issue on appeal.

actual damage is more than $1,000 but less than $5,000. Ark. Code Ann. § 5–38–203(b)(2). A person commits the offense of resisting arrest if he knowingly resists a person known by him to be a law enforcement officer effecting an arrest. Ark. Code Ann. § 5–54–103(a)(1) (Repl. 2016).

As to his criminal-mischief conviction, Hooten argues that the State failed to sufficiently prove the amount of damages to the vehicle or that he acted purposely in causing the damage. More specifically, he claims that Trooper Bass did not testify to the actual dollar amount of the cost for repairs made to the damaged vehicle, and because no other evidence of the cost of repairs was introduced, there was insufficient evidence to support the conviction of criminal mischief. Admittedly, Trooper Bass did not testify to an actual dollar amount of the repair costs. He did, however, testify that he took the car to be repaired and that it cost over $2,000 to repair the vehicle. Trooper Bass's testimony alone as to the cost of repairs was sufficient to support the verdict. *See White v. State*, 2012 Ark. App. 302; *Andrews v. State*, 2012 Ark. App. 597, 424 S.W.3d 349. Therefore, his argument fails in this respect.

He also argues that the State failed to present sufficient evidence that he purposely caused damage to the patrol car driven by Trooper Bass. He claims he was not purposely trying to cause damage to the vehicle; he was simply attempting to flee the traffic stop. We are not persuaded.

Clearly, Hooten engaged in a high-speed chase with speeds in excess of 90 miles an hour. When officers attempted to slow him down, he rammed his vehicle into Trooper Bass's car, not once, but three separate times. By statutory provision, a person acts purposely

4

with respect to his or her conduct or a result of his or her conduct when it is the person's conscious object to engage in conduct of that nature or to cause the result. Ark. Code Ann. § 5-2-202(1) (Repl. 2013). Further, we have held that it is axiomatic that one is presumed to intend the natural and probable consequences of his or her actions and that a criminal defendant's intent or state of mind will usually be inferred from the circumstances of the crime, since it is seldom capable of proof by direct evidence. *Stearns v. State*, 2017 Ark. App. 472, 529 S.W.3d 654. Since Hooten did not stop until his vehicle was disabled, and he continued to flee on foot afterward, the jury could properly infer that Hooten acted purposely when he hit and damaged Trooper Bass's vehicle in his attempt to evade the authorities.

Next, Hooten argues that there was insufficient evidence to convict him of resisting arrest. Specifically, he argues that the State failed to prove he used or threatened to use physical force or any other means that created a substantial risk of physical injury to any person. Ark. Code Ann. § 5-54-103(a)(2) (Repl. 2016). He notes that physical injury is defined as the impairment of physical condition, the infliction of substantial pain, or the infliction of bruising, swelling, or a visible mark associated with physical trauma. Ark. Code Ann. § 5-1-102(14)(A)–(C) (Repl. 2013). He contends, however, that the evidence showed no physical injury and no substantial risk that his conduct would create physical injury.

We note that Hooten's arguments on appeal are much more specific than those made at trial. In his motion for directed verdict, Hooten simply argued that "resisting requires testimony that there was a substantial risk of physical injury and that to Officer Ibarra's credit he did not quite get to that level." However, because Hooten did address the substantial-

5

risk–of–physical–injury argument below, we do not conclude that he is raising this argument for the first time on appeal. We are simply not persuaded by his position.

Here, when Trooper Ibarra attempted to arrest him, Hooten refused to submit and engaged in an extended struggle with Trooper Ibarra. Trooper Ibarra was eventually able to subdue Hooten, but the struggle was apparently physical enough to break Trooper Ibarra's microphone clip off his utility belt. This type of prolonged physical struggle could have easily resulted in bruising or other visible marks—a physical injury as defined by the statute. Thus, there was sufficient evidence from which the jury could find that Hooten's struggle with Trooper Ibarra created a substantial risk of physical injury. The fact that no physical injury actually occurred is immaterial; the statute only requires a substantial risk of such injury. Under these circumstances, there was substantial evidence to support Hooten's conviction of resisting arrest. *Bailey v. State*, 334 Ark. 43, 50, 972 S.W.2d 239, 243 (1998).

Affirmed.

GRUBER, C.J., and VAUGHT, J., agree.

*Dusti Standridge*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brooke Jackson Gasaway*, Ass't Att'y Gen., for appellee.