2015 Ark. App. 232

**Antwan FOWLER, Appellant**

**v.**

**STATE of Arkansas, Appellee**

No. CR–13–313

Court of Appeals of Arkansas,
DIVISION III.

Opinion Delivered April 15, 2015

Teresa Bloodman, Little Rock, for appellant.

Dustin McDaniel, Att'y Gen., by: Vada Berger, Ass't Att'y Gen., for appellee.

BRANDON J. HARRISON, Judge

A jury found Antwan Fowler guilty of possession of a firearm by certain persons. He now appeals his conviction, arguing that the circuit court erred in denying his motions to suppress his statement to the police and evidence seized from his car. We affirm.

In a felony information filed 18 April 2011, Fowler was charged with possession of a firearm by certain persons and aggravated assault. (The aggravated-assault charge was later nolle prossed.) He filed motions to suppress a statement he gave to the police and a gun seized from his Ford Taurus. The court held a hearing on the motions in August 2012, at which the following testimony was presented.

Officer Andrew Birmingham with the Conway Police Department testified that on 16 April 2011, he responded to a call that Antwan Fowler had pointed a gun at someone on Oak Street and then left in a black Ford Taurus. After another officer located a black Ford Taurus at a nearby gas station, Birmingham pulled up behind the vehicle and relayed the license plate number; records indicated that the vehicle belonged to Antwan Fowler. Birmingham rolled down the window of his patrol car and spoke to a man, later identified as Fowler, who was standing near the vehicle, and asked if they could talk. In response, Fowler lifted his shirt to show his waistband, and Birmingham asked Fowler to turn around so that he (Birmingham) could verify that Fowler did not have a weapon. As Fowler approached Birmingham's vehicle on foot, he asked Fowler if he had any weapons on his person, and Fowler replied no, but stated that there was a gun in his car. At that point, for safety purposes, Birmingham handcuffed Fowler but told him that he was not under arrest. Birmingham then read Fowler his *Miranda* rights and activated his audio/video recorder. A CD of the subsequent recording was played for the court; in the video, Fowler again admitted that there was a gun in his car and that he was a convicted felon, and he was placed under arrest. On cross-examination, Birmingham agreed that when he made contact with Fowler and asked to speak with him, he was not free to leave.

Officer Chris Atkins testified that when he arrived on the scene, Officer Birmingham was standing in the parking lot and speaking to Fowler. Atkins testified that he "just kind of walked around" and saw a long gun propped up against the passenger seat in Fowler's vehicle.

Defense counsel argued that the police did not have probable cause or a "particularized suspicion" to justify questioning Fowler and that Fowler was "in custody" and should have been Mirandized as soon as Birmingham approached him. The court ruled from the bench:

I am going to find that there was probable cause to inquire of Mr. Fowler because of the dispatch and the fact that the vehicle had been identified as the suspect vehicle at the [gas station] by another officer. That the contact first made was not an in custodial contact. The question is a question that is commonly asked any time an officer has contact with any person in the public, do you have any weapons. He was not in custody at the time.... After he Mirandized, and it is clear that he did give the *Miranda* Warnings to Mr. Fowler, he stated that he understood them and then he continued to say that he had a weapon in the car.... Your motion is denied.

A jury found Fowler guilty of possession of a firearm by certain persons and recommended a sentence of eighteen years' imprisonment, which the court imposed in a sentencing order entered 14 September 2012. Fowler timely appealed.

In reviewing the denial of a motion to suppress evidence, this court conducts a de novo review of the evidence based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause; we also give due weight to inferences drawn by the circuit court. *King v. State*, 2014 Ark. App. 81, 432 S.W.3d 127. And we defer to the circuit court's credibility and weight-of-the-evidence determinations, reversing only if the court's decision is clearly against the preponderance of the evidence. *Gilbert v. State*, 2010 Ark. App. 857, 379 S.W.3d 774.

Fowler focuses his argument on Officer Birmingham's initial approach and argues that the "stop and seizure could not be based upon any reasonable articulated suspicion sufficient to authorize even an investigatory stop as he had no reason to believe that a crime was afoot." He argues for a "custodial interrogation" that resulted in the admission that there was a weapon in his vehicle and that it is "undisputed that [he] was not Mirandized after he was taken into custody." Fowler also argues in his reply brief that Officer Atkins's "search" of his vehicle was illegal. We do not consider arguments made for the first time in a reply brief. *Ayala v. State*, 365 Ark. 192, 226 S.W.3d 766 (2006).

The State points to the connections between the reported crime, the black Ford Taurus registered to Fowler, and Fowler's proximity to the Taurus, and says that Officer Birmingham had a reasonable suspicion that the man standing near the Taurus was Fowler and that he may have committed an aggravated assault. The State further argues that Birmingham's initial inquiry was not a custodial interrogation and thus did not require a *Miranda* warning.

Rule 3.1 of the Arkansas Rules of Criminal Procedure provides:

A law enforcement officer lawfully present in any place may, in the performance of his duties, stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit (1) a felony, or (2) a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property, if such action is reasonably necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct. An officer acting under this rule may require the person to remain in or near such place in the officer's presence for a period of not more than fifteen (15) minutes or for such time as is reasonable under the circumstances. At the end of such period the person detained shall be released without further restraint, or arrested and charged with an offense.

Reasonable suspicion is "a suspicion based on facts or circumstances which of themselves do not give rise to the probable cause requisite to justify a lawful arrest, but which give rise to more than a bare suspicion; that is, a suspicion that is reasonable as opposed to an imaginary or purely conjectural suspicion." Ark. R.Crim. P. 2.1. Case law has established that an investigative stop is justified when, under the totality of the circumstances, the police have a specific, particularized, and articulable reason indicating that the person may be involved in criminal activity. *Davis v. State*, 351 Ark. 406, 94 S.W.3d 892 (2003).

Our supreme court has held that *Miranda's* safeguards apply as soon as a suspect's freedom of action is curtailed to a degree associated with a formal arrest. *State v. Spencer*, 319 Ark. 454, 892 S.W.2d 484 (1995) (citing *Berkemer v. McCarty*, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984)). The *Miranda* warnings are not required simply because the questioned person is a suspect. *Id.* A person is "in custody" for purposes of the *Miranda* warnings when he or she is "deprived of his freedom by formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Wofford v. State*, 330 Ark. 8, 28, 952 S.W.2d 646, 656 (1997). In deciding whether a suspect was in custody at a particular time, the relevant inquiry is how a reasonable man in the suspect's shoes would have understood his situation. *Id.* A lawful detention under Rule 3.1 does not curtail a person's freedom of action to a degree associated with a formal arrest, and a *Miranda* warning is not required. *See Ashley v. State*, 2012 Ark. App. 131, 388 S.W.3d 914.

We hold that Officer Birmingham's initial approach was based on reasonable suspicion, considering the matching vehicle description, its proximity to the location of the alleged aggravated assault, and the identification of the vehicle as belonging to Antwan Fowler. We also hold that Birmingham's initial inquiry of whether Fowler had any weapons on his person was not the result of a "custodial interrogation" and did not therefore require a *Miranda* warning. Fowler's statements that it was "a question that was framed to a person who was handcuffed" and that "[i]t is undisputed that appellant was not Mirandized after he was taken into custody" are factually incorrect. On the contrary, the undisputed testimony of Officer Birmingham established that he asked the initial question as Fowler approached his vehicle, before placing Fowler in handcuffs, and that he did Mirandized Fowler after placing him in handcuffs. And the transcript of the recording clearly establishes that Fowler told Officer Birmingham, after the officer had read the *Miranda* rights, that he (Fowler) had a gun and that he was a felon in possession of a firearm:

OFFICER: [H]ave you ever been convicted of a felony?

MR. FOWLER: Yes, sir.

OFFICER: So you're a felony [sic]—

MR. FOWLER: Yes, sir.

OFFICER: —in possession of a firearm?

MR. FOWLER: Yes, sir.

We affirm the circuit court's denial of the motion to suppress.

Affirmed.

Gladwin, C.J., and Abramson, J., agree.