
# ARKANSAS COURT OF APPEALS

DIVISION III
No. CR-16-298

| | | |
|---|---|---|
| WILLIE WELLS | | **Opinion Delivered** March 15, 2017 |
| | APPELLANT | |
| | | APPEAL FROM THE CRITTENDEN COUNTY CIRCUIT COURT |
| V. | | [NO. 18CR-2015-9] |
| | | |
| | | HONORABLE JOHN N. FOGLEMAN, JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | AFFIRMED |

## PHILLIP T. WHITEAKER, Judge

Appellant Willie Wells was charged with one count of possession of less than two grams of cocaine and one count of possession of drug paraphernalia. Prior to trial, Wells filed motions to suppress both physical evidence seized following his arrest and statements he made to the arresting officer. The circuit court denied both motions, and the matter proceeded to a jury trial. A Crittenden County jury convicted Wells of possession of cocaine but acquitted him of possession of drug paraphernalia. The jury sentenced Wells, as a habitual offender, to nine years in the Arkansas Department of Correction; it also imposed a $2,500 fine. Wells filed a timely notice of appeal and now challenges the sufficiency of the evidence supporting his convictions, the circuit court's denial of his motions to suppress, and its rejection of his request for an alternative sentencing instruction. We affirm.

I. *Sufficiency of the Evidence*

We first consider Wells's challenge to the sufficiency of the evidence supporting his conviction for possession of less than two grams of cocaine.[1] Our test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Jones v. State*, 357 Ark. 545, 182 S.W.3d 485 (2004). Evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. *Haynes v. State*, 346 Ark. 388, 58 S.W.3d 336 (2001). On appeal, we view the evidence in the light most favorable to the State, considering only that evidence that supports the verdict. *Williams v. State*, 346 Ark. 304, 57 S.W.3d 706 (2001).

Wells argues that the State failed to prove that he possessed a usable amount of cocaine.[2] Wells was arrested for shoplifting by Patrolman Brandon Clark of the West Memphis Police Department. During a search of Wells's person incident to the arrest, Clark discovered a folded piece of paper containing a white substance in Wells's pocket.

At trial, the jury heard evidence concerning the white substance found in Wells's pocket. Clark testified that when he weighed the white substance on a digital scale at the police station, it weighed .01 grams. He could not say whether his scale was a certified scale,

---

[1] Although Wells raises his sufficiency challenge as his third argument on appeal, double-jeopardy considerations require that we address this argument first. *Fowler v. State*, 2015 Ark. App. 579, 474 S.W.3d 120.

[2] Because Wells's sufficiency challenge is a narrow, legal one, we find it unnecessary at this point to discuss in depth the background facts of this case. Those facts are more pertinent with respect to Wells's arguments about the denial of his motions to suppress, and they will therefore be set forth in more detail in our discussion of those points on appeal.

SLIP OPINION

stating that it was "just for estimated weight value for when it gets sent off to the crime lab." He then bagged the evidence in a plastic envelope and had it sent to the crime lab.

Nick Dawson, a forensic drug chemist at the Arkansas State Crime Lab, testified that he received a piece of folded paper containing a white granular substance. His analysis of the substance was that it was .0577 grams of cocaine. He also testified as to the accuracy of his scale, saying that he would have calibrated the scale against a known 100-gram weight for accuracy the morning he weighed the granular substance. Dawson also noted that under his lab's guidelines, anything under .01 grams would be considered residue, but anything over that was a usable amount.

On this evidence, Wells was convicted of violating Arkansas Code Annotated section 5-64-419(a) & (b)(1)(A) (Supp. 2015), which provides that it is unlawful for a person to possess a controlled substance and that any person who possesses less than two grams (2g) of cocaine is guilty of a Class D felony. Wells points to the discrepancy between the weight observed by Clark—.01 grams—and the .0577 grams measured by Dawson, and he asserts that the State failed to prove that he possessed a usable amount of cocaine. His argument is not persuasive.

First, we note that there is no provision in our Controlled Substances Act mandating that one must possess a "usable amount" of a controlled substance to support a conviction for possession. *See Jones*, *supra*. In *Harbison v. State*, 302 Ark. 315, 790 S.W.2d 146 (1990), however, the supreme court adopted the usable-amount criteria. The *Harbison* court explained:

3

> The intent of the legislation prohibiting possession of a controlled substance is to prevent use of and trafficking in those substances. Possession of a trace amount or residue which cannot be used and which the accused may not even know is on his person or within his control contributes to neither evil.

302 Ark. at 322, 790 S.W.2d at 151. Based on this usable-amount criteria, we have reversed a conviction for possession of methamphetamine because the trace amount of residue stuck to the inside of a plastic bag could not be weighed and thus did not constitute a "usable amount." *Porter v. State*, 99 Ark. App. 137, 139, 257 S.W.3d 919, 920 (2007). We have also affirmed a conviction for possession of cocaine where both a narcotics officer and a chemist with the state crime lab testified that, in their opinion, .01 grams of crack cocaine was a "usable amount." *Terrell v. State*, 35 Ark. App. 185, 186, 818 S.W.2d 579, 580 (1991). Here, at a minimum, Wells possessed .01 grams of cocaine, a usable amount. *Id.*

Second, Wells's position is essentially a challenge to purported conflicts in the evidence or inconsistencies in the testimony. We have long held that any conflicts in the evidence or inconsistencies in the testimony are for the jury to resolve. *See Davis v. State*, 2016 Ark. App. 274, 493 S.W.3d 339. Given Clark's statement that his scale was used to "estimate" the weight and Dawson's description of how precisely his scales were calibrated, it was well within the jury's province to credit Dawson's testimony over Clark's, and according to Dawson's testimony, the cocaine found in Wells's pocket weighed .0577 grams.[3] We

_____

[3] Wells also argues that the jury found, as evidenced by a note on its verdict form, that Wells only possessed cocaine in "an amount," which he asserts means that there was a question as to the amount of cocaine. This is a misrepresentation of what the jury's note on the verdict form stated. The original form stated, "We, the Jury, find beyond a reasonable doubt that Willie Wells is guilty of possession of less than 2 grams of cocaine." Someone, presumably the foreman, inserted a handwritten notation between "possession of" and "less

4

therefore hold that there was sufficient evidence that Wells possessed a usable amount of cocaine and affirm his conviction on this charge.

## II.  *Denial of Wells's Motions to Suppress Evidence*

In what is actually his first point on appeal, Wells argues that his arrest for shoplifting was invalid, and therefore, the cocaine that was seized from him was the fruit of the poisonous tree and should have been suppressed. When reviewing a circuit court's denial of a motion to suppress evidence, we conduct a de novo review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to the inferences drawn by the circuit court. *Bathrick v. State*, 2016 Ark. App. 444, at 1–2, 504 S.W.3d 639, 641. We defer to the circuit court's superior position in determining the credibility of the witnesses and resolving any conflicts in the testimony. *Id.*

Essentially, Wells argues that Patrolman Clark lacked reasonable suspicion to stop or detain him for shoplifting; therefore, he argues that his arrest was unlawful and the cocaine found in his pocket should have been suppressed. We must therefore consider the pertinent rules and statutes that apply in such a situation: Arkansas Rule of Criminal Procedure 3.1 (2016); Arkansas Code Annotated section 5-36-102 (Repl. 2013); and Arkansas Code Annotated section 5-36-116.

Rule 3.1 provides in pertinent part that a law enforcement officer lawfully present in

---

than," so that the form as filled out reads that the jury found Wells "guilty of possession of *cocaine in an amount* less than 2 grams . . . ." Thus, we do not believe it can fairly be said that the jury had a question as to whether the amount of cocaine was less than 2 grams.

any place may stop and detain any person "who he reasonably suspects is committing, has committed, or is about to commit . . . a misdemeanor involving . . . appropriation of or damage to property, if such action is reasonably necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct." "Reasonable suspicion" is defined as "a suspicion based on facts or circumstances which of themselves do not give rise to the probable cause requisite to justify a lawful arrest, but which give rise to more than a bare suspicion; that is, a suspicion that is reasonable as opposed to an imaginary or purely conjectural suspicion." Ark. R. Crim. P. 2.1.

Next, the offense of shoplifting is discussed in Arkansas Code Annotated section 5-36-102(c) as follows:

> The knowing concealment, upon an actor's person or the person of another, of an unpurchased good or merchandise offered for sale by any store or other business establishment, gives rise to a presumption that the actor took the good or merchandise with the purpose of depriving the owner or another person having an interest in the good or merchandise.

A person engaging in conduct giving rise to a presumption under section 5-36-102(c) "may be detained in a reasonable manner and for a reasonable length of time by a law enforcement officer, merchant, or merchant's employee in order that recovery of a good may be effected." Ark. Code Ann. § 5-36-116(a)(1). Moreover, "[u]pon probable cause for believing a suspect has committed the offense of shoplifting, a law enforcement officer may arrest the person without a warrant." Ark. Code Ann. § 5-36-113(d)(1). Subsection (d)(2) states that "[t]he law enforcement officer, merchant, or merchant's employee who has observed the person accused

of committing the offense of shoplifting shall provide a written statement that serves as probable cause to justify the arrest."

With these standards and rules in mind, we now turn to a more complete assessment of the background facts leading to Wells's arrest. Wells entered a Dollar General store in West Memphis. Silvia Sims, the store manager, observed Wells—via a store security camera—place some store merchandise in his pants. Wells left the store and walked to his red Dodge Durango in the parking lot. Sims watched as Wells was unable to start his truck. She called the police and reported the incident, the suspect, and a description of the truck and the items stolen.

While Wells was trying to start the truck, several police officers, including Patrolman Clark, arrived on the scene. Clark saw the red Dodge Durango and pulled in behind it. When Clark made contact with the occupant of the car, Wells stepped out of the vehicle and said, "[M]an, I didn't steal anything. What do you want with me?" Clark observed the items that Sims had described as having been stolen inside Wells's vehicle. Clark advised Wells that he was being placed under arrest for theft of property and proceeded to search him. During the search, Clark found a folded-up piece of paper in Wells's pocket that contained crack cocaine. At the suppression hearing, Clark clarified that he searched Wells's person because Clark had placed him into custody for transport. The stolen items were returned to the Dollar General store,[4] and at some point, Sims filled out an affidavit regarding the shoplifting.

---

[4] Wells subsequently pleaded guilty to the shoplifting charge.

We find that this sequence of events clearly gives rise to a reasonable suspicion on which Clark could detain Wells pursuant to Rule 3.1. *See, e.g.*, *Nottingham v. State*, 29 Ark. App. 95, 101, 778 S.W.2d 629, 632 (1989) (report by store owner about a possible intoxicated driver, coupled with police officer's personal observation of defendant sleeping behind the wheel of his running car with a beer can between his legs, constituted reasonable suspicion that defendant had committed the offense of DWI, and detention was therefore a permissible Rule 3.1 stop).

Moreover, Sims's observation of Wells stuffing merchandise down his pants gave rise to the shoplifting presumption found in section 5-36-102(c). Further, Clark testified that he merely "detained Mr. Wells" until after Sims had completed the signed affidavit and did not search him until after the affidavit had been procured. For that reason, the detention of Wells by law enforcement officers was proper under section 5-36-116(a). Although Wells essentially argues on appeal that the probable cause to arrest him could not have arisen until after Sims had signed the affidavit pursuant to subsections 5-36-116(d)(1)–(2), we disagree. The statute says that the person who observed the shoplifting "shall provide a written statement that serves as probable cause to justify the arrest," and that "upon probable cause for believing the suspect has committed the offense of shoplifting, a law enforcement officer may arrest the person without a warrant." It does not explicitly require that the affidavit be a temporal prerequisite to the existence of probable cause.

In summary, here, there was a proper Rule 3.1 stop, coupled with a personal observation of the stolen items corroborating the shoplifting victim's report, and a shoplifting

affidavit that was signed at some point roughly contemporaneously with the stop and subsequent arrest. In reviewing the denial of a motion to suppress, we consider the totality of the circumstances. Under that totality, we are unable to say that the circuit court erred in finding that Wells's arrest was proper and that the search of his person subsequent to his arrest was valid.

## III. *Denial of Motion to Suppress Statements*

In his next argument on appeal, Wells contends that any statements he made to Clark at the time of his detention and arrest should have been suppressed as well. To address this argument, we consider more of the background facts and circumstances surrounding his statements.

As stated earlier, Wells was placed under arrest by Clark for theft of property. Clark conducted a search of Wells's person incident to arrest and found the folded-up piece of paper in his pocket. At that time, Wells made the first of two statements. Wells spontaneously stated, "Clark, please don't do this, man, stomp it out, get rid of it for me." In response, Clark read Wells his *Miranda* rights, and after Wells acknowledged that he understood his rights, Wells "advised that it was, in fact, crack cocaine that [Clark] had found on his person." On appeal, Wells contends that the circuit court should have suppressed these two statements.

In this regard, Wells raises two arguments. His first brief argument is that because his arrest was improper, his statements should have been suppressed. As discussed above, however, his arrest was proper; therefore, there is no merit to this portion of his argument.

SLIP OPINION

In his second argument, Wells contends that the State had the burden of proving that his statements were voluntary. At the suppression hearing, the State did not call every officer who was present when Wells gave his statements to testify, and therefore, Wells argues that the State failed in its burden of showing that his statements were voluntary.[5]

We find it unnecessary to consider his argument with respect to his first, spontaneous statement to Clark, when he asked Clark to "please stomp it out." As discussed above, Clark conducted a proper Rule 3.1 stop, and Wells was not in custody at this point. *See Fowler v. State*, 2015 Ark. App. 232, at 5, 459 S.W.3d 837, 840 (holding that lawful detention under Rule 3.1 does not curtail a person's freedom of action to a degree associated with a formal arrest such that a *Miranda* warning is required) (citing *Ashley v. State*, 2012 Ark. App. 131, 388 S.W.3d 914). Moreover, Wells's initial statement was spontaneous. A suspect's spontaneous statement is admissible, and it is irrelevant whether the statement was made before or after *Miranda* warnings because a spontaneous statement is not compelled or the result of coercion under the Fifth Amendment's privilege against self-incrimination. *Anderson v. State*, 2011 Ark. 461, at 15, 385 S.W.3d 214, 224 (citing *Sweet v. State*, 2011 Ark. 20, 370 S.W.3d 510). Here, Wells volunteered this statement before Clark had said anything to him, and Wells concedes on appeal that this statement was spontaneous.

With regard to his second, post–*Miranda* statement, Wells relies on *Smith v. State*, 254 Ark. 538, 494 S.W.2d 489 (1973), to argue that the circuit court should have granted his

---

[5] Officer Clark testified at the suppression hearing that he was not the only officer present when Wells was arrested; he could not recall who was there, but other officers assisted Sims with her affidavit. Only Clark testified at the hearing, however.

SLIP OPINION

motion to suppress because the State failed to call all material witnesses to testify at the suppression hearing. This reliance is unavailing.

In *Smith*, the supreme court set forth the doctrine of the material-witness rule. The supreme court noted that the burden of proving the voluntariness of a confession "is one which the State must assume when the admissibility of a confession is questioned on the grounds that it was coerced. Only by producing all material witnesses connected with the controverted confession can the State discharge this burden." *Id*. at 541–42, 494 S.W.2d at 491. Accordingly, the *Smith* court adopted the rule that "*whenever the accused offers testimony that his confession was induced by violence, threats, coercion, or offers of reward* then the burden is upon the State to produce all material witnesses who were connected with the controverted confession or give adequate explanation for their absence." *Id*. at 542, 494 S.W.2d at 491 (emphasis added).

In this case, Wells was afforded his *Miranda* warnings. Afterward, he admitted that the substance in his pocket was cocaine. There was never any allegation—and certainly never any testimony—that this statement was coerced or induced by violence, threats, or offers of reward. The material-witness rule is therefore simply inapplicable, and we find no merit to the argument that the circuit court should have granted his suppression motion because the State failed to call all of the officers who were present at the scene of Wells's arrest.

IV. *Denial of Alternative Sentencing Instruction*

In his final point on appeal, Wells argues that the circuit court should have allowed him to offer a jury instruction on alternative sentencing pursuant to Arkansas Code Annotated

section 16-97-101 (Repl. 2016). The decision to allow alternative sentencing is reviewed for an abuse of discretion. *Benjamin v. State*, 102 Ark. App. 309, 314–15, 285 S.W.3d 264, 268 (2008). This standard of review is a high threshold, and it requires that a trial court act improvidently, thoughtlessly, or without due consideration. *Hoodenpyle v. State*, 2013 Ark. App. 375, at 13, 428 S.W.3d 547, 554.

Section 16-97-101(4) provides that after a defendant has been found guilty by a jury, the circuit court, "in its discretion, may also instruct the jury that counsel may argue as to alternative sentences for which the defendant may qualify. The jury, in its discretion, may make a recommendation as to an alternative sentence. However, this recommendation shall not be binding on the court." Our court has further noted that the "permissive tone of the language in Arkansas Code Annotated section 16-97-101(4) is unmistakable." *Squyres v. State*, 2015 Ark. App. 665, at 9, 476 S.W.3d 839, 845 (citing *Dale v. State*, 55 Ark. App. 184, 935 S.W.2d 274, 278 (1996)).

Wells was charged as a habitual offender pursuant to Arkansas Code Annotated section 5-4-501 (Repl. 2013), having been previously convicted of four felonies. The jury convicted Wells of a Class D felony. As a result, the jury could impose punishment within a range of zero years to not more than fifteen years in prison. Ark. Code Ann. § 5-4-501(b)(2)(E) (Supp. 2015).[6] Wells's counsel asked the circuit court if he would be permitted to argue alternative instructions to the jury, suggesting that his conviction for a Class D felony "carries down to zero years and it can be considered as an alternative." The court replied, "Other than that it's

---

[6] The un-enhanced range of punishment for a Class D felony is not more than six years. Ark. Code Ann. § 5-4-401(a)(5).

SLIP OPINION

discretionary with the judge, and if Mr. Wells didn't have so much experience I might be inclined in this case to agree with you. The jury, if they want to give him a break, they can fine him." After counsel suggested that the jury be allowed to consider an alternative sentence and use its discretion by denying it, the court answered, "Well, I'm using my discretion not to instruct them on it."[7]

On appeal, Wells assigns error to the circuit court's refusal to allow the jury to consider alternative sentencing, insisting that the court abused its discretion. We do not agree. Here, the circuit court explicitly considered Wells's criminal history and determined that an alternative sentence of probation would not be appropriate. This was not an abuse of discretion, but an exercise of it. *Cf. Steele v. State*, 2014 Ark. App. 257, at 12, 434 S.W.3d 424, 432 (citing Rodgers *v. State*, 348 Ark. 106, 71 S.W.3d 579 (2002) (noting that "[m]echanical imposition of the jury's recommended sentences or an unwavering court policy refusing to instruct the jury on alternative sentences with respect to certain offenses is not an exercise of discretion.").

Affirmed.

GRUBER, C.J., and VIRDEN, J., agree.

*Dusti Standridge*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Karen Virginia Wallace*, Ass't Att'y Gen., for appellee.

---

[7] Wells proffered the instruction he wished to read to the jury; it advised the jury that Wells "may also contend that he should receive [an] alternative sentence of probation." His proffered alternative-sentence verdict form reflected an option for the jury to "place [the defendant] on supervised probation for a period of 0-72 months upon conditions to be imposed by the Court."