DAVID M. GLOVER, Judge
LaFrancis Sanford, Jr., was convicted by a Benton County Circuit Court jury of residential burglary, a Class B felony, and theft of property, a Class A misdemeanor. He was sentenced as a habitual offender to thirty years in the Arkansas Department of Correction. Pursuant to *555 Anders v. California , 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and Rule 4-3(k) of the Rules of the Arkansas Supreme Court and Court of Appeals, Sanford's counsel has filed a motion to withdraw on the basis this appeal is wholly without merit. The motion is accompanied by an abstract and addendum of the proceedings below, which addresses all objections and motions decided adversely to Sanford, and a brief in which counsel explains why there is nothing in the record that would support an appeal. The clerk of our court provided Sanford with a copy of his counsel's brief and notified him of his right to file a pro se statement of points for reversal; Sanford has submitted no points. We affirm Sanford's convictions and grant counsel's motion to withdraw.
Sufficiency of the Evidence
At trial the victim, Belinda Christopher, testified she left her residence around 2:10 p.m. on May 18, 2016, to pick up her niece's children from school, and she left the front door unlocked when she left. When she returned between 2:40 and 2:50 p.m., she noticed a man walking away from her residence on her driveway; she thought it was "weird" because the man would not look at her when she saw him. Christopher said as she pulled into the driveway, the man looked scared and nervous, would not make eye contact, and began removing what looked like batting gloves; he then began jogging up the street and around the corner. She testified the man would not look at her, he did not stop and talk to her in the driveway, and he never explained what he was doing in her driveway. Christopher followed the man in her car; when she caught up to him, she took pictures of him with her cell phone while he pretended to be talking on his phone. She said the man kept grabbing the left pocket of his pants, and she could clearly see there were items in his pocket. Christopher identified Sanford as the man who had been in her driveway.
She immediately returned to her residence after taking pictures of Sanford and noticed her dog was agitated and upset, which was not normal; she further discovered that five to seven one-dollar bills were missing from the kitchen counter that were there before she went to pick up the children. She determined that medication was missing from the kitchen windowsill; on further inspection, she realized medicine had also been taken from the medicine cabinet in her niece's bathroom. Additionally, she concluded that the passport application she had been completing with personal information, along with her birth certificate, were also missing. After verifying that none of her family members had removed the items, and after making sure Sanford was not simply delivering advertising flyers or had been coming from her house for some other legitimate reason, Christopher called the Bentonville Police Department and made a report. She testified she had never seen Sanford prior to May 18, 2016, and he did not have permission to be in her home on that day.
Bentonville police officer Michael Alexander testified he responded to Christopher's residential-burglary report, at which time she advised him that she had observed a black male, approximately five feet, four inches tall, with short hair, and wearing a gray jacket, gray shorts, black shoes, and gloves that were light on one side and darker on the other side, walking down her driveway from her house toward the street as she was returning home. According to Officer Alexander, Christopher reported she had discovered items missing from her house; the man she saw in her driveway was acting suspiciously; and his pockets were bulky, leading her to believe something was in them. She provided a copy of the photo she had taken of *556 the man to Officer Alexander, who circulated the photo by email to the entire police department. He received responses from two officers, both of whom immediately identified the subject as Sanford.
Officer Alexander testified that a search warrant was issued for Sanford's address, which was approximately two miles from Christopher's house, but none of the stolen items were located at Sanford's house. However, Sanford's roommate informed Officer Alexander that Sanford had not been home from the time the burglary was committed to the time the search was conducted, and Officer Alexander surmised it was therefore unlikely to find the stolen items at Sanford's house. After receiving information that Sanford might be at a different address, Officer Alexander and Officer Nick Brown went to that address, where they found Sanford in the garage at the house. Sanford ran inside the house when he saw the officers. The officers entered the house and ordered Sanford to the ground at gunpoint. Sanford's girlfriend told the officers he was not fleeing but was just bringing a child inside and putting his shoes on; however, Sanford failed to take the child, who was in the garage with him, when he ran inside the house. Officer Brown's testimony regarding Sanford's apprehension was the same as Officer Alexander's testimony.
Detective Mark Jordan testified that when Officer Alexander circulated the photo of the suspect in the Christopher residential burglary, he confidently recognized the person as Sanford; he identified Sanford in open court as the defendant. According to Detective Jordan, he said he called Sanford the day after the residential burglary and asked him why he would go into that lady's house; Sanford hung up on him and would not answer the phone when Detective Jordan called him back. After his arrest, Sanford admitted to Detective Jordan that he was the man in the picture, but he denied burglarizing Christopher's house or even being in her driveway. Sanford told Detective Jordan he had run out of gas at a Kentucky Fried Chicken and that was why he had been walking, but Detective Jordan said his statement was inconsistent with where he was in Christopher's neighborhood.
At the close of the State's case, Sanford moved for a directed verdict, which was denied. He rested without calling any witnesses and renewed his directed-verdict motion, which was again denied. In his directed-verdict motions, with regard to residential burglary, Sanford argued the State failed to prove he entered or remained unlawfully on the premises of another with the intent to commit a crime punishable by imprisonment; with regard to theft of property, Sanford argued the State failed to prove a theft had occurred, much less that he was ever in the house he was alleged to have burglarized.
A directed-verdict motion is a challenge to the sufficiency of the evidence. Holland v. State , 2017 Ark. App. 49, 510 S.W.3d 311. Our test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. Wells v. State , 2017 Ark. App. 174, 518 S.W.3d 106. Evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. Id. The law makes no distinction between circumstantial and direct evidence when reviewing for sufficiency of the evidence. Fronterhouse v. State , 2015 Ark. App. 211, 463 S.W.3d 312. Circumstantial evidence may constitute substantial evidence to support a conviction if it excludes every other reasonable hypothesis other than the guilt of the accused. Holland, supra. The question of whether circumstantial evidence excludes *557 every reasonable hypothesis consistent with innocence is a determination for the finder of fact; on review, we must determine whether the fact-finder had to resort to speculation and conjecture to reach its decision. Davis v. State , 2015 Ark. App. 234, 459 S.W.3d 821.
On appeal, the evidence is viewed in the light most favorable to the State, and only the evidence supporting the verdict is considered. Wells, supra. Weighing the evidence, reconciling conflicts in testimony, and assessing credibility are all matters exclusively for the trier of fact. Holland, supra.
A person commits residential burglary "if he or she enters or remains unlawfully in a residential occupiable structure of another person with the purpose of committing in the residential occupiable structure any offense punishable by imprisonment." Ark. Code Ann. § 5-39-201(a)(1) (Repl. 2013). A person commits theft of property "if he or she knowingly takes or exercises unauthorized control over ... the property of another person with the purpose of depriving the owner of the property." Ark. Code Ann. § 5-36-103(a)(1) (Repl. 2013).
The evidence, although circumstantial, is sufficient to support Sanford's convictions. Christopher's testimony established that when she returned home after a short errand, she found Sanford walking down her driveway away from her house; he would not look at her, did not stop to explain why he was in her driveway, and began to look nervous and jog down the street quickly away from her. She then discovered items were taken from her house in the thirty to forty minutes she was gone from her house. She testified she had never seen Sanford before May 18, 2016, and had not given him permission to be in her house. When questioned by Detective Jordan, Sanford gave an inconsistent explanation as to why he was in Christopher's neighborhood. Furthermore, when officers arrived at the house where Sanford was located, he attempted to flee. A person's flight to avoid arrest can be considered as corroboration of evidence tending to establish his guilt. Ricks v. State , 316 Ark. 601, 873 S.W.2d 808 (1994). Given this evidence, a jury could conclude that the circumstantial evidence excluded every other reasonable hypothesis other than Sanford's guilt.
Other Adverse Rulings
In addition to the denial of Sanford's directed-verdict motions, there were two other rulings during Sanford's trial adverse to him. The first adverse ruling occurred during Officer Alexander's testimony. On cross-examination, Sanford's counsel questioned Officer Alexander about his interview of Jacob Moody, a man who was working as a lawn-care provider on Christopher's street at the time of the incident; what Moody told him during the interview; and whether he considered Moody to be a suspect in the residential burglary and theft of property. Officer Alexander replied he did not consider Moody to be a suspect. On redirect, the prosecutor inquired about Officer Alexander's conversation with Moody; defense counsel objected, arguing Moody's responses were hearsay, and if Moody's statement was needed, he should have been subpoenaed as a witness. The State argued defense counsel had asked Officer Alexander if he considered Moody a suspect, and the State was entitled to ask Officer Alexander to explain why he did not. The trial court overruled the objection, stating it was going to allow a "limited amount," to the extent defense counsel had opened the door.
Our court will not reverse a circuit court's evidentiary rulings unless there *558 was an abuse of discretion. Williams v. State , 2012 Ark. App. 447, 2012 WL 3744714. It has been recognized that otherwise inadmissible testimony may be offered when one party has opened the door for another party to offer it. Larimore v. State , 317 Ark. 111, 877 S.W.2d 570 (1994). Here, defense counsel elicited hearsay testimony about what Moody had told the officer in an attempt to suggest Moody could have also been a suspect in the residential burglary and theft of property. The circuit court then allowed the State to ask Officer Alexander to explain why he did not consider Moody to be a suspect, which was not an abuse of discretion.
The second adverse ruling occurred during the State's redirect examination of Detective Jordan. The State asked Detective Jordan if it was correct that about twelve days had elapsed between Sanford's breaking into Christopher's house and his arrest. Defense counsel objected and requested that the circuit court ask the prosecutor to be more careful with her language, arguing that she made it sound like there was a conclusion Sanford had broken into Christopher's house, and that assumed facts not yet properly in evidence. The prosecutor responded that the State had charged Sanford with doing exactly that, therefore, there was no sort of mischaracterization. The circuit court overruled the objection.
There was no error in overruling the objection. The State charged Sanford with entering Christopher's house without her permission. Christopher had already testified Sanford was the person she saw coming down her driveway from her house and that he did not have permission to be in her house right before she discovered items missing from her house.
From our review of the record and the brief presented, we find counsel has complied with the requirements of Rule 4-3(k) and hold that there is no merit to this appeal. Accordingly, Sanford's convictions are affirmed, and counsel's motion to withdraw is granted.
Affirmed; motion to withdraw granted.
Abramson and Brown, JJ., agree.