Cite as 2019 Ark. App. 434

# ARKANSAS COURT OF APPEALS

DIVISION III

No. CR-19-202

| | | |
|---|---|---|
| ROBERT COBB | | **Opinion Delivered:** October 2, 2019 |
| | APPELLANT | APPEAL FROM THE MARION COUNTY CIRCUIT COURT [NO. 45CR-17-102] |
| V. | | |
| STATE OF ARKANSAS | APPELLEE | HONORABLE GORDON WEBB, JUDGE |
| | | AFFIRMED |

## MEREDITH B. SWITZER, Judge

Appellant Robert Cobb was convicted by a Marion County Circuit Court jury of one count each of residential burglary, attempted breaking or entering, criminal mischief in the first degree, theft of a firearm, and theft of property, and two counts of breaking or entering. Cobb was sentenced as a habitual offender. The circuit court ordered that the convictions for residential burglary, attempted breaking or entering, theft of a firearm, and theft of property be served consecutively, with the first-degree-criminal-mischief and the two breaking-or-entering convictions to be served concurrently with the other convictions, for a total of fifty-five years' incarceration. On appeal, Cobb argues the circuit court erred in denying his motions for directed verdict on all seven counts. We affirm.

### I. *Facts*

At trial, testimony established that on November 18, 2017, William Wood discovered that Robert Barron's residence and outbuildings in Summit, Arkansas, had been

broken into. Wood, a friend of Barron's, knew Barron was out of state for an extended period, and he was checking on Barron's property, which was marked with no trespassing signs. Wood explained that Barron's driveway had a locked gate, so he had entered the property using the power-line right-of-way. Wood noticed some items strewn about the property, and he knew that when he had been to the property less than a month before to read the water meter, the property was in "perfect" condition. Wood called the Marion County Sheriff's Office to report the break-in.

The officers who responded also had to access the property using the power-line easement due to the lock on the gate across the driveway, and they reported numerous items strewn up and down the road, including bags and boxes of tools and a trash can filled with tools located at the bottom of the power-line easement. Doors on two sheds were open and the buildings had been rummaged through, and the sliding glass door to Barron's house had been broken. Officers observed that a camper trailer on the property had pry marks on the door; it appeared an attempt had been made to enter the camper, but the door was locked. When Wood received permission from Barron for the officers to enter the house, they discovered the power had been shut off. Barron told them that the power was on when he left. Officers described the house as "completely destroyed"; every room had been ransacked, items were gathered in piles throughout the house as though someone was coming back to remove the remaining items, televisions were missing, and the hinges and door of a heavy-duty fireproof gun safe had been removed. Barron informed the officers that he had guns in the safe; all the guns were missing.

While investigating the break-in, officers observed two males walking down the road from the locked, gated driveway at the front of the property. As the two men initially approached the house they were walking normally, but then they were described by officers as beginning to walk "suspiciously" in a crouched, sneaking position the closer they got to the house, and one man began walking to the front of the residence while the other man headed toward the rear of the residence. The men were later identified as Cobb and Anthony Contreras. When officers told the two men to freeze, Cobb began to run from the scene, but he eventually obeyed orders to halt. When apprehended, Cobb had a gray backpack and a ratchet in his hand. When asked why he was on the property, Cobb stated they were going to Allen's Grocery and this was a shortcut; however, one officer testified Allen's Grocery was in the opposite direction, and it was unnecessary for the men to cross Barron's property to get to the grocery. Cobb then asked the officers "what the f★★★" they were doing there and how did they get there.

Officers were able to obtain pictures taken by a game camera located outside the residence. While unable to see the man's face, the pictures showed a man wearing a tan shirt, pants, a camouflage hat, and white tennis shoes and holding a laundry basket full of items. One officer testified he saw Cobb wearing a hat and shoes resembling the ones in the game-camera pictures.

Robert Barron testified that his property sits on thirty lots, which are all wooded except the area around the house. He said his driveway gate was locked when he went out of town, but someone could go around the gate or climb it if they wanted to do so. He explained that he had two game cameras outside; one had been stolen and the other had

3

not. Barron described his house as more or less "demolished" and "trashed" on the inside. The power had been turned off; Barron believed the alarms scared the person who had entered the house and turning off the power silenced the alarms. Barron testified that two small safes containing birth certificates, car titles, silver, gold, coins, and his grandfather's gold watches were torn from the wall where they had been bolted to the sheetrock, and they had been removed from the premises. He said insurance paid him $10,000 for the loss of his property and another $4,000 for the loss of his guns, but he estimated his total loss was around $35,000, and insurance did not cover the silver, gold, or his tools. He said some of the items taken from his shop building included generators, a power washer, and bicycles, and he believed someone was coming back because his large air compressor had been placed by the door. Barron testified that the backpack and ratchet found on Cobb when he was apprehended looked like his property. He explained that there had also been an attempt to enter his thirty-two-foot camper by prying the door, but it was locked; he estimated it would cost at least $500 to replace the door, so he had simply attempted to hammer the frame back to its original shape.

When the State rested its case, Cobb moved for a directed verdict on all counts, arguing there was no evidence he was the person who entered Barron's property and committed the offenses. He contended that he had found the items in his possession when he was apprehended (the backpack and the rachet) on the easement, and it was not a crime to pick up misplaced or abandoned property. This motion was denied. Cobb presented no witnesses. He renewed his motion for directed verdict, which was again denied. The jury returned guilty verdicts on all counts.

4

## II. *Standard of Review*

A directed-verdict motion is a challenge to the sufficiency of the evidence. *Sanford v. State*, 2019 Ark. App. 10, 567 S.W.3d 553. Our test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion and conjecture. *Hamrick v. State*, 2019 Ark. App. 298, 577 S.W.3d 734.

The law makes no distinction between circumstantial and direct evidence when reviewing for sufficiency of the evidence. *Sanford*, *supra*. The jury is permitted to draw any reasonable inference from circumstantial evidence to the same extent that it can from direct evidence. *Deviney v. State*, 14 Ark. App. 70, 685 S.W.2d 179 (1985). Guilt can be established without eyewitness testimony, and evidence of guilt is not less because it is circumstantial. *Trimble v. State*, 316 Ark. 161, 871 S.W.2d 562 (1994). Circumstantial evidence may constitute substantial evidence to support a conviction if it excludes every other reasonable hypothesis other than the guilt of the accused. *Hamrick*, *supra*. Whether circumstantial evidence excludes every other reasonable hypothesis consistent with innocence is a determination for the fact-finder; on review, the appellate court must determine whether the fact-finder had to resort to speculation and conjecture to reach its decision. *Sanford*, *supra*. On appeal, the evidence is viewed in the light most favorable to the verdict, and only evidence supporting the verdict is considered. *Hamrick*, *supra*. The appellate court does not weigh the evidence presented in the circuit court as that is a matter for the fact-finder, nor does it assess the credibility of the witnesses. *Hamrick*, *supra*.

5

## III. *Discussion*

Cobb was convicted of seven offenses: residential burglary, attempted breaking or entering, criminal mischief in the first degree, theft of a firearm, theft of property, and two counts of breaking or entering. A person commits residential burglary if he or she "enters or remains unlawfully in a residential occupiable structure of another person with the purpose of committing in the residential occupiable structure any offense punishable by imprisonment." Ark. Code Ann. § 5-39-201(a)(1) (Repl. 2013). A person commits theft of property if he or she knowingly "takes or exercises unauthorized control over or makes an unauthorized transfer of an interest in the property of another person with the purpose of depriving the owner of the property." Ark. Code Ann. § 5-36-103(a)(1) (Repl. 2013). Theft of property is a Class D felony if the "value of the property is five thousand dollars ($5,000) or less but more than one thousand dollars ($1,000)" or if the property is "a firearm valued at less than two thousand five hundred dollars ($2,500)." Ark. Code Ann. § 5-36-103(b)(3)(A) & (B) (Repl. 2013).

A person commits breaking or entering if "for the purpose of committing a theft or felony he or she breaks or enters into any building, structure, or vehicle." Ark. Code Ann. § 5-39-202(a)(1). It constitutes a separate offense for the breaking or entering into of each separate building, structure, or vehicle. Ark. Code Ann. § 5-39-202(b)(1). A person attempts to commit an offense if he or she "purposely engages in conduct that constitutes a substantial step in a course of conduct intended to culminate in the commission of the offense whether or not the attendant circumstances are as the person believes them to be." Ark. Code Ann. § 5-3-201(a)(2). A person commits criminal mischief in the first degree if

6

he or she "purposely and without legal justification destroys or causes damage to any property of another." Ark. Code Ann. § 5-38-203(a)(1). This offense is a Class D felony if the amount of actual damage is more than $1,000 but less than $5,000. Ark. Code Ann. § 5-38-203(b)(2).

Cobb's overarching sufficiency argument for all seven offenses turns on the fact that the evidence in this case is entirely circumstantial. He argues the State failed to produce any direct evidence of his involvement in the crimes and further left the jury to rely on speculation and conjecture to convict him.

Cobb is correct that all the evidence in this case is circumstantial. However, circumstantial evidence may constitute substantial evidence to support a conviction if it excludes every other reasonable hypothesis other than the guilt of the accused. *Hamrick*, *supra*. This court must now determine whether the fact-finder resorted to speculation and conjecture to reach its decision. We hold it did not.

Cobb argues that the State "woefully failed to develop the case and investigate reasonable alternative theories." He further contends that none of the State's witnesses could state with certainty that he was the person who had committed these offenses on Barron's property. Although it is essential to every case that the defendant be shown as the one who committed the crime, that connection can be inferred from all the facts and circumstances of the case. *Davis v. State*, 2011 Ark. App. 561.

In this case, the State presented sufficient circumstantial evidence from which the jury could reasonably infer that Cobb was the person who had committed these offenses. Cobb and Contreras entered Barron's property, which contained thirty lots, bypassing a

7

locked gate. They began walking "suspiciously" as they approached Barron's house and then split up, with Cobb going to the front of the residence and Contreras to the rear of the residence. When confronted by law-enforcement officers, Cobb began to run away but was apprehended. Fleeing from the scene of the crime is relevant to the issue of guilt. *Goforth v. State*, 2010 Ark. App. 735. When questioned why he was on the property, Cobb stated it was a shortcut to Allen's Grocery; however, one of the officers testified the store was in the opposite direction, and there was no reason for the two men to be on the property. Improbable explanations of incriminating conduct can be considered to infer evidence of guilt. *Id*. It was apparent Cobb was unaware the officers were on the property, as he asked one officer "what the f★★★" was he doing there and how did he get there. When apprehended, Cobb had a backpack and a ratchet in his hand, both of which Barron testified looked like his property. Furthermore, a game camera captured photos of a man with a laundry basket of items; while the man's face was not visible, law-enforcement testimony indicated that the hat and the shoes the man was wearing resembled the ones worn by Cobb when he was apprehended. Given the entirety of this circumstantial evidence, the jury could conclude without resorting to speculation or conjecture that Cobb had committed the offenses.

Affirmed.

VIRDEN and VAUGHT, JJ., agree.

*Potts Law Office*, by: *Gary W. Potts*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Jacob H. Jones*, Ass't Att'y Gen., for appellee.