Cite as 2025 Ark. App. 229

# ARKANSAS COURT OF APPEALS
## DIVISION III
### No. CR-24-365

| | |
|---|---|
| CHARLES MILLER<br><br>V.<br><br>STATE OF ARKANSAS | Opinion Delivered April 16, 2025<br><br>APPEAL FROM THE UNION COUNTY CIRCUIT COURT [NO. 70CR-22-258]<br><br>HONORABLE SPENCER G. SINGLETON, JUDGE<br><br>AFFIRMED |

APPELLANT

APPELLEE

## CASEY R. TUCKER, Judge

Charles Miller appeals his convictions of attempted first-degree murder and aggravated residential burglary in the Union County Circuit Court. He raises three points on appeal: (1) the circuit court erred in denying his motion for directed verdict; (2) the court erred in allowing the State to improperly comment during voir dire about Miller potentially not testifying; and (3) the court abused its discretion by refusing to strike Juror E for cause. We affirm.

Late at night on May 4, 2022, Miller was hanging out with his girlfriend, Chasity Pierce, and her ex-boyfriend, Willie Hicks, at Pierce's apartment. According to Pierce's testimony at trial, around 1:30 in the morning on May 5, 2022, Miller and Hicks left in Hicks's car. Pierce testified that Miller and Hicks called her and told her they had her gun, which she had left inside her purse in her car. Miller had returned to Pierce's car to retrieve

his wallet before leaving with Hicks. Pierce reported to the police the next morning that her .22-caliber Taurus handgun that contained three rounds in it was missing from her purse.

Security-camera videos showed that Miller was at a local Go Rainbow gas station[1] between 3:47 and 3:51 a.m. The video depicted Miller wearing black jeans with a red stripe and a white stripe running down the outside seam of each leg, a black t-shirt, and Nike shoes. Miller can be seen getting into the passenger side of a light gray or silver Chevrolet Monte Carlo that was identified as belonging to Hicks. The gas station was approximately a mile from where Hicks lived with his girlfriend, Jekia Washington.

According to the testimony of law enforcement officers, the 911 call center received a call at 4:14 a.m., less than half an hour after Miller and Hicks were seen leaving the gas station in Hicks's car. The El Dorado police responded to the call at 1342 Wilson Street, where Hicks and Washington were living. The door to the house had been "busted in" and the door frame broken. The officers found Hicks on a fold-out couch in the front room of the house. He was alive but unresponsive and had a single gunshot wound to his head. Washington had been shot in her face and back and had been pistol-whipped. According to her testimony, this occurred while she was alone in her bedroom at the back of the house. She was screaming when the officers arrived and remained responsive. Washington and

---

[1]Captain Jarod Primm testified that when a crime happened in the area, officers often checked the video from the Go Rainbow gas station security camera at the corner of Lorraine and Junction City Road for leads.

2

Hicks were transported by ambulance to the hospital. The officers found three .22-caliber shell casings in the house. One was in the front room and two were in the back bedroom.

Officers executed a search warrant at Miller's apartment.[2] There they found the jeans, t-shirt, and shoes that fit the assailant's description from the security-camera video. These items, along with some other items, were in a trash bag by Miller's back door. Witnesses from the Arkansas State Crime Laboratory testified that the jeans had red stains on them that, upon testing, were determined to be blood. Crime-lab testing also revealed that the jeans had gunshot residue and Washington's DNA on them.

Washington survived the attack. Her gunshot injuries were consistent with small-caliber rounds. Hicks died from the single shot that entered his head above and behind his right ear. The doctor who performed the autopsy testified that he found a .22-caliber bullet in Hicks's brain. The autopsy evidence indicated that the gun was not fired at close range.

Miller was charged with one count of capital murder, one count of attempted capital murder, and one count of aggravated residential burglary. At the conclusion of a two-day jury trial, the jury acquitted Miller of the capital-murder charge and its lesser-included offenses. The jury found Miller guilty of attempted first-degree murder (a lesser-included offense of attempted capital murder) and aggravated residential burglary. The State did not

---

[2]Captain Primm testified that the following facts supported the request for a search warrant: (1) they had seen the victim, Hicks, and Miller at the Go Rainbow gas station, which was approximately one mile from the scene of the crime and less than thirty minutes before the 911 call; (2) Pierce had reported her .22-caliber gun stolen; and (3)at the hospital, Washington vaguely described the shooter as a light skinned black male who was approximately five feet eight and had short dreadlocks.

seek the firearm enhancement. The court sentenced Miller as a habitual offender to serve forty years on each count with the sentences to run consecutively, for a total term of eighty years. This appeal followed.

I. *Sufficiency of the Evidence*

Miller first argues that the court erred in denying his motions for a directed verdict. He maintains that this is a purely circumstantial case, and the State's evidence did not exclude every reasonable theory of innocence. We disagree.

An appeal from the denial of a motion for directed verdict is a challenge to the sufficiency of the evidence. *Starling v. State*, 2016 Ark. 20, 480 S.W.3d 158. This court considers the evidence in the light most favorable to the State and considers only that evidence that supports the verdict. *Daniels v. State?*. Evidence is sufficient if it is of such force that it will compel a conclusion one way or the other without requiring the jury to resort to speculation or conjecture. *Id.* Matters of credibility are for the jury, which can choose to believe part or all of any witness's testimony and resolve any conflict in the evidence or testimony. *Id.*

Miller is correct that the case at bar is one of circumstantial evidence. However, we make no distinction between circumstantial evidence and direct evidence when we review the sufficiency of the evidence to support a guilty verdict. *Cobb v. State*, 2019 Ark. App. 434, 585 S.W.3d 196. Circumstantial evidence may constitute substantial evidence to support a conviction if it excludes every other reasonable hypothesis other than the guilt of the

4

defendant. *Id.* Whether circumstantial evidence excludes every other reasonable hypothesis consistent with innocence is for the jury to decide. *Id.* This court's role in reviewing the evidence is to determine whether the jury was required to resort to speculation and conjecture in reaching its guilty verdict. *Id.*

In light of the testimony, the video evidence from the gas station, and the crime-lab test results in this case, the circumstantial evidence of Miller's guilt was substantial. According to Pierce's testimony, which the jury chose to believe, Miller was at Pierce's apartment and left with Hicks. According to Pierce, Miller and Hicks removed her .22-caliber handgun from her purse that she left inside her car and took it with them. Pierce's gun contained three rounds. There were three casings found at the scene of the crime. The video recordings show that Miller left the Go Rainbow gas station, which was about a mile from the victims' residence, less than thirty minutes before Washington's 911 call. Because of the video footage at the gas station, the officers knew what Miller was wearing while he was with Hicks. They testified they found what appeared to be the same clothes in a trash bag inside the back door of Miller's residence. The jeans had blood, gunshot residue, and Washington's DNA on them.

While Miller argues that Washington's DNA could have gotten on his jeans by means other than his shooting and pistol whipping her, the jury was free to decide otherwise. As to Miller's argument that a reasonable hypothesis is that Pierce was the perpetrator of the crimes, it was for the jury to decide Pierce's credibility. Clearly, the jury believed Pierce when she testified that Miller and Hicks had taken her gun.

5

Circumstantial evidence supports a conviction if it is consistent with the accused's guilt and inconsistent with any other reasonable conclusion. *Wyles v. State*, 368 Ark. 646, 249 S.W.3d 782 (2007). This determination is a question of fact for the jury, and we will not disturb it unless we find that the jury resorted to speculation and conjecture in order to reach its verdict. *Id.* Based on the substantial evidence supporting the verdicts, we do not find that the jury resorted to speculation and conjecture in reaching its guilty verdicts.

II. The State's Voir Dire Comments

Appellant argues on appeal that the circuit court erred in allowing the State to make comments during voir dire about Miller's potential decision not to testify, thereby violating his Fifth Amendment privilege against self-incrimination. He contends that the circuit court should have granted Miller a mistrial, even though he did not move for one. Appellant's argument is not preserved for appeal.

The following occurred during the prosecutor's portion of voir dire:

| PROSECUTOR: | Okay. And if the defendant did not testify -- again, defendants are not required to prove their innocence. If a defendant did not testify, would you have a problem with that? |
|---|---|
| PROSPECTIVE JUROR: | No. |
| PROSECUTOR: | Okay. Because there are -- I think we would all agree -- I think there are some people who feel like if this person didn't do anything, they need to get up here and explain themselves. Do you feel that way? |
| PROSPECTIVE JUROR: | No. Not necessarily. |

| | |
|---|---|
| PROSECUTOR: | Okay. Thank you, Ms. Cook. Ms. Hendricks, the same question to you. |
| DEFENSE COUNSEL: | Your Honor, I'm going to have to object on this. I don't think this is an appropriate voir dire question. May we approach? |
| THE COURT: | You may. |
| | (Proceedings at sidebar as follows:) |
| DEFENSE COUNSEL: | It draws too much attention as to whether or not he is testifying or not testifying. It's not appropriate. This line of questioning, I would object to because it's ~ it's his decision. We don't know if he is going to testify or not at this point. I am probably going to recommend that he does not. However, I don't think it is an appropriate voir dire question for the jury panel. |
| PROSECUTOR: | I was just asking if they had a problem with it. If they do have a problem with it, that is the ones I'm trying to get out of here are the ones who have a problem with it. |
| DEFENSE COUNSEL: | Right. They won't always answer properly on that. And it gets that issue into their heads and it will stay with them throughout the trial whether or not he testifies or not. And as such, I think it is not appropriate to continue on this line of questioning in voir dire. |
| THE COURT: | I believe the court instructed in general voir dire the fact that defendant has nothing to prove. |
| DEFENSE COUNSEL: | Right. |
| THE COURT: | And I think step in talking about that, I just would caution you not to. |

7

| | |
|---|---|
| PROSECUTOR: | Okay. |
| DEFENSE COUNSEL: | And the answers they give can influence the other jurors on the panel. Even if they don't speak up, the ones that could be influenced ~ I might be influenced by an answer and never say anything else. |
| THE COURT: | I think that has been covered previously. |
| PROSECUTOR: | Okay. <br> (Proceedings continuing in open court as follows:) |
| PROSECUTOR: | You don't have to answer that question. |

The prosecutor then changed his line of questioning.

The preceding excerpt confirms that defense counsel objected, made his argument, and was given what he requested: the court cautioned the prosecutor, and the prosecutor moved on from the objected-to line of questioning. Notably, defense counsel did not move for a mistrial. Having been given what he requested at the trial level and having not requested a mistrial, this court will not consider Miller's argument on appeal that the trial court should have granted a mistrial. *See Sanders v. State*, 278 Ark. 420, 646 S.W.2d 14 (1983) (trial court allowed prosecutor to go beyond the purpose of voir dire in his comments, but since appellant had not moved for a mistrial or requested an admonition, there was no prejudicial error).

Miller urges this court to apply the third *Wicks* exception in this case in order to reach the merits of this point. We decline to do so. In *Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980), the supreme court noted that Arkansas does not recognize the plain-error rule,

8

meaning that we require the appellant to have brought the alleged error to the attention of the trial court before it will be considered on appeal. The court went on to discuss the three rare exceptions to the general rule that an objection is required below for the issue to be preserved for appeal: (1) a circuit court's failure to bring to the jury's attention a matter essential to consideration of the death penalty; (2) a circuit court makes the error and does so at a time when defense counsel would have no knowledge of the error and thus no opportunity to object; and (3) a serious error occurs, without an objection, and the circuit court has the duty to intervene by either admonishing the jury or declaring a mistrial. *Id.* at 786, 606 S.W.2d at 369. The example the court provided for the third error was that of a circuit court's failing to keep a prosecutor in line during closing argument, and the court cautioned that this example had not yet been applied to reverse a case.

Miller does not cite a case in which the third *Wicks* exception was applied under circumstances in which the defendant objected at trial and received the relief he sought. Nor does he cite a case in which an Arkansas appellate court applied the third *Wicks* exception when the appellant claimed the State had violated his Fifth Amendment right against self-incrimination. In *Chunestudy v. State*, 2012 Ark. 222, 408 S.W.3d 55, the supreme court held that the third exception does not apply in such cases. The appellant in *Chunestudy* asserted on appeal that several times during the course of his trial, either the State or a witness made statements that violated his constitutional right to remain silent. The appellant acknowledged that he had not objected at the circuit court level but urged the supreme court to apply the third *Wicks* exception. The court declined to do so, stating:

9

Our case law is clear that *Wicks* presents only narrow exceptions that are to be rarely applied. *See Anderson v. State*, 353 Ark. 384, 108 S.W.3d 592 (2003). Specifically, the third exception has been applied very rarely to cases including the right to a twelve-person jury, violations of Ark. Code Ann. § 16-89-125(e) (Repl. 2005), and statements by a prosecutor in voir dire which have the effect of shifting the burden of proof. *See, e.g., Ayala v. State*, 365 Ark. 192, 226 S.W.3d 766 (2006); *Anderson, supra*; *Goff v. State*, 329 Ark. 513, 953 S.W.2d 38 (1997); *Grinning v. City of Pine Bluff*, 322 Ark. 45, 907 S.W.2d 690 (1995). We, therefore, conclude that the errors of which Chunestudy now complains are not of the sort that fall into the third *Wicks* exception and that would require the circuit court to intervene on its own motion.

*Id.* at 10, 408 S.W.3d at 62–63.

Miller objected to the State's questioning during voir dire regarding a defendant's right to remain silent, and after a bench conference in which the court cautioned the prosecuting attorney, the prosecuting attorney moved on to a different subject. Miller did not move for a mistrial, and pursuant to precedent, the circuit court was not obliged to grant one on its own motion. The third *Wicks* exception does not apply. Thus, this point is not preserved for appeal.

### III. *Juror E*

Miller's final point on appeal is that the circuit court abused its discretion by refusing to strike Juror E for cause because her brother was the former sheriff, she came from a family of police officers, and she grew up spending a lot of time at the El Dorado Police Department. The State responds that Miller's argument is barred because he did not exhaust his peremptory challenges. The State is correct.

10

To challenge a juror's presence on appeal, the appellant must show that he exhausted his peremptory challenges and that he was forced to keep a juror who the court should have dismissed for cause. *Ferguson v. State*, 343 Ark. 159, 33 S.W.3d 115 (2000). Miller asserts that he had exhausted his peremptory challenges by the time Juror E's name was called because he had used eight such challenges. The flaw in Miller's position is that he was entitled to twelve peremptory challenges due to his being charged with capital murder. Ark. Code Ann. § 16-33-305(b) (Repl. 1999). Since Miller had four peremptory challenges remaining when the circuit court refused to dismiss Juror E for cause, we do not consider his final point on appeal.

Affirmed.

Harrison and Barrett, JJ., agree.

Law Offices of John Wesley Hall, by: *Samantha J. Carpenter*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Joseph Karl Luebke*, Ass't Att'y Gen., for appellee.